UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles ZWEBER, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry Allen HUDSON II,
Defendant–Appellant.

Nos. 89–30235, 89–30240.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1990.

Decided Aug. 31, 1990.

Ronald Hoevet, Hoevet, Snyder & Miller, Marc D. Blackman, Ransom, Blackman & Weil, Portland, Or., for defendants-appellants.

J. Russell Ratto, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before GOODWIN, Chief Judge, FLETCHER and FERNANDEZ, Circuit Judges.

FLETCHER, Circuit Judge:

Charles Zweber and Jerry Allen Hudson appeal their convictions for distributing cocaine in violation of 21 U.S.C. § 841(a). They argue that the trial court erred in denying them offense level reductions for playing minor or minimal roles in the offense, in refusing to depart downward because of a disparity between their sentences and those of their alleged co-conspirators, in considering cocaine involved in non-conviction charges as relevant conduct when computing their base offense levels, and in denying their motions to withdraw guilty pleas. We affirm.

## FACTS

On June 21, 1988, an informant told drug task force officers that Jerry Hudson had sold him cocaine on numerous occasions in the past four years and that Charles Zweber assisted Hudson in this enterprise. The informant, under task force supervision, arranged with and purchased 28.1 grams of cocaine from Zweber on June 23, 1988, 141 grams from Hudson on July 11, 1988, and 27.6 grams from Hudson on July 21, 1988. On September 27, 1988, the informant again arranged with Hudson to purchase cocaine. Zweber picked up the cocaine at Hudson's house, under surveillance, and met the informant in a parking lot to complete the sale. The police were

on the scene and confiscated 390.2 grams of cocaine but did not take into custody Zweber, or Hudson, who subsequently arrived at the sale location.

Counsel for both defendants cooperated with the government and offered their assistance in the government's investigation of the larger cocaine distribution network of which they were a part. John Carl Webber ran this ring, and Joel Bennett, two rungs down, was Hudson's sole cocaine supplier. The defendants' efforts to negotiate with the government regarding their expected charges were unsuccessful. The government was not interested in network activity below Bennett's level; it declined the offers of information on Bennett's customers from both Bennett and the defendants.

Eventually, the government indicted and prosecuted Hudson and Zweber separately from the network members. Zweber was charged with two counts of distribution for the June 23 and September 28 transactions, and Hudson with three counts of distribution for the July 11, July 21, and September 28 transactions. Each pleaded guilty to the September 28 count. In the plea agreement, the government agreed to recommend a two-point reduction for both defendants for acceptance of responsibility, a three-point reduction for Hudson for playing between a minimal and minor role in the offense, and a four-point reduction for Zweber for playing a minimal role, as measured against the Webber/Bennett ring members. Each defendant also acknowledged that cocaine seized from him would be considered as relevant conduct under § 1B1.3.

In sentencing Zweber, the judge aggregated the cocaine from the June 23 and September 28 transactions under the relevant conduct provision, § 1B1.3, reaching a total of 418.3 grams. Likewise as to Hudson, the judge aggregated the cocaine from both the July and September sales, arriving at a total of 558.8 grams. Under § 2D1.1(c), with the two-point acceptance

of responsibility deduction, Zweber's base offense level was 22 and Hudson's was 24. Neither had any prior criminal record. Hudson's sentence range, accordingly, was 51–63 months; the court sentenced him to 51 months. Zweber's range was 41–51 months; the court sentenced him to 41 months.

The court did not grant the recommended role reductions. Although the court assumed that the defendants were a part of the Webber/Bennett network, it held that any § 3B1.2 reduction must be based on their roles in the offenses of which they were convicted, not the conspiracy conduct.

The defendants complained that members of the Webber/Bennett ring got lighter sentences than they did, despite the fact that they were lower in the hierarchy. All of the co-conspirators but Webber, the top dog, got 27 months or less.[1] The defendants sought a departure based on the unfair sentence disparity. The court refused, reiterating that they acted independently in respect to the charged offenses.

When the court granted neither role reductions nor downward departures to the defendants, they moved to withdraw their guilty pleas. The judge denied their motions, finding that the defendants' representation by their attorneys had not been ineffective, and that he had ensured that the defendants understood that the government's recommendations were not binding on the court.

## JURISDICTION

■ We have no jurisdiction to review a trial court's refusal to depart downward in sentencing a defendant under the Guidelines, as long as the court in fact exercised its discretion. *United States v. Pelayo–Bautista*, 907 F.2d 99, 101 & n. 1 (9th Cir. 1990); *United States v. Morales*, 898 F.2d 99 (1990). The district court did not fail to exercise its discretion in considering Hud-

---

1. Even if Zweber and Hudson had received three- and four-level reductions for lesser roles, their sentences necessarily would still have been higher than all conspiracy members but Webber

and one other member who got 27 months. Their offense levels would have dropped to 18 and 21, respectively, producing sentence ranges of 27–33 and 37–46 months.

son's and Zweber's downward departure requests, so we have no jurisdiction to review its denial of those requests. We have jurisdiction to review the defendants' other sentencing claims under 18 U.S.C. § 3742.

## DISCUSSION

### I. ROLE REDUCTIONS

#### A. *Standard of Review*

■ Hudson and Zweber raise both legal and factual issues. The issue of whether a defendant is a minor or minimal participant in a criminal offense under the particular facts of the offense is reviewed for clear error. *United States v. Gillock*, 886 F.2d 220, 222 (9th Cir.1989) (per curiam). The district court's legal interpretation of the Guidelines is reviewed *de novo*. *United States v. Foreman*, 905 F.2d 1335, 1337 (9th Cir.1990) (§ 3B1.3 adjustment).

#### B. *Legal Issue*

■ The defendants make an unusual argument: they want the court to consider them a part of a larger cocaine conspiracy for sentencing purposes in order to get role reductions under U.S.S.G. § 3B1.2 (Oct. 1988).[2] The government stipulated to their participation in the conspiracy, but the stipulation and recommendation does not bind the court. *Pelayo–Bautista*, 907 F.2d at 102; U.S.S.G. § 6B1.4(d). In addition, the plea agreement by its own terms states that the government's recommendations are not binding on the court.

The court reached the correct legal conclusion that the defendants could receive reductions only for their roles in their offenses of conviction, but not their roles in the uncharged and unconvicted conspiracy. Section 3B1.2's reduction for playing a mitigating role is one of the authorized adjustments in Guidelines Chapter 3 Pt. B for role in the offense. U.S.S.G. Ch. 3, Pt. B, intro. comment. Section 3B1.1, using sim-

ilar language to § 3B1.2, prescribes enhancement for playing an aggravating role, and § 3B1.3 enhancement for abusing a position of public trust or use of a special skill in committing or concealing the offense. Under § 3B1.4, no adjustment other than those authorized in §§ 3B1.1–.3 may be made for role in the offense.

Section 3B1.2 reads,

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

Under the explicit language of this provision, the defendant's role in the offense of conviction, not collateral conduct, whether charged or uncharged, is the proper basis for enhancing or reducing a sentence because of the defendant's role. Section 3B1.4 makes the basis for role adjustments spelled out in chapter 3 Pt. B exclusive: "In any other case, no adjustment is made for role in the offense." Thus, the defendant's role in collateral conduct is an impermissible basis for role adjustment.

Excluding collateral conduct from consideration is an exception to the Guidelines regime. Ordinarily, all "relevant conduct" should be considered in determining the offense level. U.S.S.G. § 1B1.3(a). Section 1B1.3(a)(1) defines relevant conduct as

all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

---

**2.** Generally, defendants wish to avoid being considered part of a conspiracy because conduct of co-conspirators can increase the defendants' sentences under the relevant conduct provision in § 1B1.3. The district court, in fact, stated its

belief that if it accepted Zweber's and Hudson's argument that their roles in the conspiracy merited sentence reductions, it also would have to consider other potentially aggravating conspiracy conduct in sentencing the defendants.

The Background to § 1B1.3 states that "[s]ubsection (a) establishes a rule of construction" in determining "the range of conduct that is relevant to determining the applicable offense level," but only "in the absence of more explicit instructions in the context of a specific guideline."

Other circuits have considered the opening language of both § 3B1.1 and § 3B1.2, "[b]ased on the defendant's role in the offense," as explicit instructions in the context of specific guidelines. *United States v. Tetzlaff*, 896 F.2d 1071, 1075 (7th Cir. 1990); *United States v. Williams*, 891 F.2d 921, 926 (D.C.Cir.1989).[3] The circuits addressing this language have interpreted it to mean that an adjustment in offense level based on role must be for a role in the offense of conviction only, not for role in collateral conduct. Our circuit first supported this interpretation in dicta in *United States v. Nuno–Para*, 877 F.2d 1409, 1413 (9th Cir.1989) (§ 3B1.2 concerns "defendant's role in the offense of which he was convicted"). Subsequently, the Eighth Circuit held that § 3B1.2 does not authorize "reductions for minor roles played in events collateral to the offense charged." *United States v. Williams*, 879 F.2d 454, 458 (8th Cir.1989) (defendant convicted of possessing an unregistered firearm could not get minor role reduction for her involvement in threatening a United States presidential candidate, the activity giving rise to the firearm arrest). The D.C. Circuit agreed, stating that "the phrase 'the offense,' as it appears in context, . . . plainly refers to the offense for which the defendant was convicted." *Williams*, 891 F.2d at 925. Likewise, the Seventh Circuit has held that "[t]he plain language of Guidelines § 3B1.1 requires that the sentencing court focus on the 'defendant's role in the offense,' rather than other criminal conduct." *Tetzlaff*, 896 F.2d at 1074. The Tenth Circuit recently adopted *Tetzlaff*'s conclusion. *United States v. Pettit*, 903 F.2d 1336, 1340–41 (10th Cir.1990) (§ 3B1.-1).[4] We agree with the other circuits that have addressed the issue that the role adjustment guideline specifically requires the court to adjust only for the defendant's role in the conviction offense, not in charged or uncharged collateral conduct.

Some of these courts have indicated that the defendant's participation in collateral conduct can assist the sentencing court in determining her or his role in the conviction offense. *United States v. Garvey*, 905 F.2d 1144, 1146 (8th Cir.1990) (court can consider prior conduct in determining role in offense); *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir.1990) (willing to consider evidence of collateral conduct but none offered); *Williams*, 879 F.2d at 458 ("a sentencing court could appropriately consider conduct other than that which constitutes an element of the charged offense to determine the extent of the defendant's role in the offense"). For example, application note 2 to § 3B1.2 states that a district court could appropriately give a four-point reduction for a minimal role to someone who functioned as a courier for a single drug transaction. The court may consider evidence of collateral conduct to determine whether the defendant was indeed a courier for only a single transaction. The defendant's role in the collateral conduct can only shed light on her or his role in the conviction offense; the role in the collateral conduct may not itself serve as the basis for a role adjustment.

### C. *Factual Issue*

██ Both defendants were involved in the offense to which they pleaded guilty.

---

**3.** These two cases address the language of § 3B1.1, but the reasoning is equally applicable to § 3B1.2. Section 3B1.1 begins in the same way as § 3B1.2, except for the direction of the adjustment: "Based on the defendant's role in the offense, increase the offense level as follows. . . ." The section then provides for four-, three-, and two-level enhancements based on the extent of the defendant's aggravating role.

**4.** The Fourth Circuit has hinted, but only vaguely, at a different position on this issue. In *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir.1990), the court appeared willing to consider the defendant's relationship to alleged non-indicted co-conspirators in addressing her § 3B1.2 claim, but she was unable to produce any evidence that anyone else had participated in "the offense," possession of cocaine with intent to distribute.

Hudson was not less culpable than Zweber; by everyone's admission, Zweber was beneath Hudson in the supply line. Although the government agreed with Zweber that Zweber was less culpable than Hudson in the offense, the district court found that a role reduction for Zweber also was unjustified.

Zweber requested a four-point reduction for playing a minimal role. This adjustment "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under [§ 3B1.2], the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2, comment. (n. 1). The minimal role adjustment should be used infrequently, and Zweber's prior involvement in at least one other drug sale indicates that his involvement in the conviction offense was not the kind that qualifies as a minimal role. *Id.* n. 2 (serving as courier for single transaction an example of "minimal" role).

■ The district court also did not err in denying Zweber a two- or three-point adjustment. "A minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* n. 3. According to the background to § 3B1.2, its "range of adjustments [are] for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." The government calls Zweber a runner, but Zweber appears to have been more than a courier. Furthermore, courier status alone does not require a role reduction. Culpability, not courier status, is the key. *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Zweber picked up what he knew to be cocaine, handed the cocaine to the informant, and received the money in return, demonstrating that he was trusted with

responsibility in the deal. The district court did not clearly err in finding that Zweber was not substantially less culpable than Hudson in the September 28 cocaine sale.

## II. RELEVANT CONDUCT

■ Zweber and Hudson argue that the district court incorrectly aggregated the cocaine from the charges dismissed under the plea agreement with the cocaine from the conviction offense as relevant conduct in determining their offense level.[5] This argument is foreclosed by the defendants' stipulation at the time of entering their guilty pleas in respect to aggregation of drug amounts in dismissed and pled counts. During the period between the time of sentencing and the time of argument on appeal, Ninth Circuit law in this area was subject to some uncertainty, no doubt leading to defense counsel's arguments on appeal. In light of clarifications to the Guidelines' Commentary, it is now clear that a court can aggregate drugs from pled and unpled counts.

## III. MOTIONS TO WITHDRAW GUILTY PLEAS

### A. Standard of Review

■ Invoking different standards of review, Zweber and Hudson make several different claims centered on the plea withdrawal issue. They argue that the district court should have granted their motion to withdraw their guilty pleas, which the district court may do for a "fair and just reason." Fed.R.Crim.P. 32(d). The panel reviews a district court's decision to grant or deny such a motion for abuse of discretion. *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir.1990) (per curiam); *United States v. Signori*, 844 F.2d 635, 637 (9th Cir.1988). Defendants also argue that their guilty pleas were not voluntary. The voluntariness of a guilty plea is subject to *de novo* review. *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir.1986). Finally, their lawyers argue that they were ineffective at

5. If the court had not aggregated these amounts, Zweber's base offense level would have dropped

from 24 to 22, and Hudson's from 26 to 22.

sentencing. The district court's decision that they were not is also subject to *de novo* review. *Id.*

### B. *Contract Claims*

The defendants contend that the district court should have let them withdraw their pleas because the contract setting out the plea agreement was voided when the court did not follow the government's role reduction recommendation. They rely on three contract theories: mutual mistake of law, failure of consideration, and illusory contract.

■ Zweber and Hudson allege that they and the government made a mutual mistake of law in concluding that a role reduction would be legally appropriate. The defendants' mistake of law does not require the court to permit them to withdraw their pleas. An attorney's mistaken conclusion that the defendant's confession was admissible led the attorney to recommend to the defendant that he plead guilty in *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). The Court held that "Parker's plea of guilty was an intelligent plea not open to attack on the grounds that counsel misjudged the admissibility of Parker's confession." *Id.* at 798, 90 S.Ct. at 1463. In *Garcia*, we held that a defense attorney's miscalculation under the Guidelines, discovered at sentencing, does not require the court to grant the defendant's withdrawal motion. 909 F.2d at 1348 (miscalculation occurred because of attorney's mistake of law, not of fact). The fact that the mistake in this case was mutual does not support the defendant's claim. It is unfortunate that the government and defense counsel both erred, but defense counsel are not entitled to rely on the government's good faith misunderstanding of the law as a basis for relief. Analogies to contract law in this setting are not perfect.

■ The defendants also allege failure of consideration. They mistakenly assert that the consideration for the plea agreement was the judge's reduction of their offense levels due to their minor and minimal roles. The consideration was instead the government's promise to recommend that the defendants receive these adjustments. The government abided by its agreement (and actually cooperated with the defendants in attempting to persuade the court to accept the recommendation). There was no failure of consideration.

■ The defendants' final contract claim is that the agreement was illusory. As explained above, however, the government's promise was not illusory. The government promised to recommend the role reductions, adequate consideration even aside from the other consideration for the plea agreement. The government could and did fulfill this promise.

### C. *Involuntariness*

■ "A guilty plea must be the voluntary expression of the defendant's own choice." *Iaea*, 800 F.2d at 866 (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). A plea which is coerced or induced by illicit promises is involuntary and void. *Id. Iaea* found the defendant's plea involuntary because his chosen lawyer threatened to withdraw from the case and his brother threatened to withdraw his bail if he did not plead guilty. *Id.* at 866–67.

Zweber and Hudson have not claimed that they were coerced, by their lawyers, by the government, or by any third party. They claim, essentially, that they were induced to plead guilty by the government's "unfulfillable promises" and erroneous advice. The government attorneys, however, offered no advice to the defendants and made no unfulfillable promises. They promised to recommend the reductions, and they did. The plea agreement stated specifically that the recommendations did not bind the court, and the court told the defendants the same thing at their plea hearings and that he could decide to reject the role reduction request. The defendants were adequately informed and not falsely induced; their pleas were not involuntary.

### D. *Ineffective Assistance of Counsel*

■ The defendants must show that their "counsel's performance was deficient

and that the deficient performance prejudiced [their] defense" to prove their ineffective assistance claim. *Iaea,* 800 F.2d at 864 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Counsel's performance must be outside "the range of competence demanded of attorneys in criminal cases." *Id.* (citing *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)). If counsel is ineffective, then the plea is involuntary. *See Parker,* 397 U.S. at 797–98, 90 S.Ct. at 1462–63 (effective assistance of counsel necessary to voluntariness of plea). *Iaea* established that a defendant is entitled to withdraw his plea when information given by the attorney to the defendant on his potential sentence term is clearly erroneous under existing law. 800 F.2d at 864–65; *see also Hammond v. United States,* 528 F.2d 15, 18 (4th Cir.1975) (counsel's misadvice so gross that he was ineffective and plea was involuntary).

The Guidelines were in initial stages of interpretation by the courts when the defendants were sentenced, and few reported cases had applied either § 3B1.2 or § 3B1.1. The first circuit court to consider directly whether collateral conduct could form the basis for a role adjustment did so only a few days before the defendants' guilty pleas. *See Williams,* 879 F.2d at 454. Zweber's and Hudson's lawyers failed to anticipate the court's interpretation of § 3B1.2, but their approach was not clearly wrong under the existing cases. The district court commended Hudson's lawyer for his representation after he made the ineffective assistance argument (Zweber's lawyer waited a day to move to withdraw the plea) and found that the plea agreement negotiated for both defendants was "good" and "dependable." Defense counsel's assistance was not outside the acceptable range of competence.

## CONCLUSION

We affirm the district court's sentencing on the role adjustment, relevant conduct, and guilty plea issues and decline jurisdiction of the departure issue.

AFFIRMED.