**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry Paul LILLARD,
Defendant–Appellant.**

No. 90–30202.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1991.

Decided March 29, 1991.

Robert J. Larson, Eugene, Or., for defendant-appellant.

Deborah J. Dealy–Browning, Thomas M. Coffin, Asst. U.S. Attys., Eugene, Or., for plaintiff-appellee.

Before BROWNING, WRIGHT and FARRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The defendant appeals the denial of his motion to suppress and his sentence. We affirm.

I

State police had been investigating Jerry Paul Lillard for possible methamphetamine manufacturing and in November 1988 placed him under 24–hour surveillance. On November 17, three officers, in two separate cars, followed Lillard's van when it left his rented house. The van was traveling 70 to 75 m.p.h. down a two-lane country road where the speed limit was 55 m.p.h. The officers saw the van skid around a corner.

Detective Parnell stated that he stopped the van because Lillard was speeding and driving carelessly, and was suspected of

manufacturing methamphetamine. Parnell approached the van with his gun drawn. When he reached the van, he recognized a distinct odor associated with methamphetamine manufacturing.

Lillard was arrested and advised of his *Miranda* rights, which he indicated he understood. He was questioned about the house and the drug lab. Later, after having been unhandcuffed and advised of his rights a second time, Lillard signed a consent form for the search of his van and rented house.

When the van and house were searched, police found codefendant Donald Lynn Holcomb, guns, quantities of drugs and chemicals, and a fully operational methamphetamine lab. Pursuant to a search warrant supported by facts obtained in the November 1988 search, Lillard's Sutherlin, Oregon residence was searched on July 26, 1989. A second lab, guns and a variety of chemicals were found.

Lillard was arrested by federal agents in October. He entered a conditional guilty plea to manufacturing methamphetamine in July 1989 and to possession of unregistered machine guns in October 1989. He was sentenced to consecutive terms of 231 months and 24 months, to be followed by three years of supervised release.

## II

Lillard contends that the searches violated his Fourth Amendment rights and that all evidence obtained from them should be suppressed. We review de novo a denial of a motion to suppress. *United States v. Miller*, 812 F.2d 1206, 1208 (9th Cir.1987).

■ It is undisputed that Lillard was speeding carelessly in violation of Oregon law. The officer who stopped him testified that he knew about Lillard's suspected methamphetamine manufacturing but that he would have stopped him anyway because of his speeding and careless driving. *Cf. United States v. Prim*, 698 F.2d 972,

975 (9th Cir.1983) (warrant was a pretext because officers testified it was not the reason for their action). We reject Lillard's argument that the stop was a pretext.

■ As the officers approached the van, they smelled a distinct odor they knew was associated with making methamphetamine. This fact, coupled with the earlier suspicions that Lillard was making the drug, supports the conclusion that there was probable cause to arrest. *See United States v. Greene*, 783 F.2d 1364, 1368 (9th Cir.), *cert. denied*, 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986).

■ Lillard also contends he was threatened and did not voluntarily waive his rights when he consented to the search of his van and rented house. Whether consent was voluntary is a question of fact reviewed for clear error. *United States v. George*, 883 F.2d 1407, 1411 (9th Cir.1989). The district court's findings that the officer's and Lillard's versions of the conversation in question revealed a concern for safety and that Lillard's consent was voluntary were not clearly erroneous. We affirm the denial of his motion to suppress.

## III

### A. Leadership Role

Lillard argues that the two-level leadership role enhancement to his base offense level for the drug manufacturing charge was inappropriate because he was the only participant in the offense of conviction. *See* United States Sentencing Commission, *Guidelines Manual* § 3B1.1(c) (Nov.1990) (U.S.S.G.)[1] The government conceded that Holcomb, who was at the lab in November 1988, was not a participant in activities at the July 1989 lab to which Lillard pleaded guilty.

Lillard relies on *United States v. Zweber*, 913 F.2d 705 (9th Cir.1990) to assert that a

---

1. *Aggravating Role:*
   Based on the defendant's role in the offense, increase the offense level as follows:
   (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
   U.S.S.G. § 3B1.1(c).

court may enhance a sentence under § 3B1.1 only for the role played in the offense of conviction, not collateral criminal conduct. For the purposes of § 3B1.2 (Mitigating Role), *Zweber* defined "role in the offense" as the role played in the "offense of conviction." *Id.* at 708. While the *Zweber* court approved of the Seventh and D.C. Circuits' view that "offense" means "offense of conviction" for § 3B1.1 as well, references in *Zweber* to § 3B1.1 were dicta. *See id.* at 709. We must now address the issue directly and in light of new commentary.

The amended introductory commentary to Chapter 3, Part B clarifies the relationship between § 1B1.3 (Relevant Conduct) and §§ 3B1.1 and 3B1.2. "The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 ... and not solely on the basis of elements and acts cited in the count of conviction." U.S. S.G. Ch.3, Pt.B, intro. comment.; *see United States v. Fells*, 920 F.2d 1179, 1183–84 (4th Cir.1990); *United States v. Mir*, 919 F.2d 940, 945 (5th Cir.1990). Because of this change, we hold that § 3B1.1 is not limited to the offense of conviction.

The new commentary, added after this court's decision in *Zweber*, is not inconsistent with that decision as to § 3B1.2. The defendants in *Zweber* wanted the court to consider their mitigating roles in the context of a large drug conspiracy, rather than their aggravating roles in the one conviction count of drug distribution. *Zweber*, 913 F.2d at 708. The commentary follows *Zweber*: "where the defendant has received mitigation by virtue of being convicted of an offense significantly less serious than his actual criminal conduct, ... a further reduction in the offense level under § 3B1.2 ... ordinarily is not warranted...." U.S.S.G. Ch. 3, Pt. B, intro. comment.

Our different treatment of "offense" in § 3B1.1 furthers the goals of sentence uniformity and proportionality. A defendant,

who is part of a large drug conspiracy but convicted only of possession, should not be rewarded for his participation in the conspiracy by receiving a lighter sentence than one who was convicted of possession but had no connections to a larger scheme. The *Zweber* rule assures that. Similarly, a defendant, who is a leader of a drug operation but is convicted only of possession, should receive a harsher sentence through § 3B1.1 than his codefendant, the errand boy.

Here, the district court adopted the presentence report, which found specifically that Lillard operated two methamphetamine labs and that Holcomb was his employee. Evidence indicated that the labs were sophisticated and ongoing. The court's findings and conclusion that Lillard played a leadership role in the offense of manufacturing methamphetamine were not clearly erroneous. We hold that the district court properly considered Lillard's relevant November 1988 conduct in determining that he played a leadership role in the manufacturing offense.

*B. Criminal History*

Lillard contends his criminal history calculation should not be enhanced under § 4A1.1(d) for an unserved sentence. His Oregon conviction was affirmed on appeal in 1988, but by July 1989 he had yet to serve his sentence of six months in jail.

Two points are added to a defendant's criminal history calculation "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). Lillard contends that, because he was not under direct state supervision or control in July 1989, § 4A1.1(d) is inapplicable. Non-supervisory status does not exempt the sentence from inclusion under § 4A1.1(d). *See United States v. McCrudden*, 894 F.2d 338, 339 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 1534, 108 L.Ed.2d 773 (1990).[2]

2. We reject Lillard's reliance on *United States v. Dillon*, 905 F.2d 1034 (7th Cir.1990). The *Dillon*

court was faced with a significantly different situation. *See id.* at 1037. Unlike Dillon's sen-

■ If a defendant commits another crime after being sentenced, but before his sentence is served, the § 4A1.1(d) enhancement is appropriate. *United States v. Mackbee*, 894 F.2d 1057, 1058 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2574, 109 L.Ed.2d 755 (1990). The district court did not err by enhancing Lillard's criminal history calculation by two points.

## C. Destruction of Evidence

According to Lillard, chemicals seized from his labs were destroyed before he or the government had a chance to weigh them. He argues for suppression of the testimony about the chemical quantities, claiming he was prejudiced per se and denied due process at sentencing because he had no way of disproving the amount the government claimed it found.[3]

■ When primary evidence is destroyed and secondary evidence is used, the latter's admissibility at trial turns on a balancing test aimed at insuring a fair trial. *See United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir.1979) (en banc), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). The court "must weigh the extent of the Government's culpability [for the lost evidence] and the degree of prejudice to the appellant." *United States v. Kennedy*, 714 F.2d 968, 975 (9th Cir.), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1983).

■ Because sentencing courts are not limited to evidence that would be admissible at trial when determining relevant facts, such as lab capacity, *see United States v. Burns*, 894 F.2d 334, 337 (9th Cir.1990), we are uncertain about whether the *Loud Hawk* evidentiary rule applies in the sentencing context. Assuming that it is applicable, we conclude the district court properly considered the evidence of the lab's capacity. There was no evidence of government misconduct, and Lillard failed to show prejudice. He had an opportunity at the sentencing hearing to present his own experts to refute the estimated capacity of the lab based on the physical characteristics and equipment and to cross-examine the government witnesses. *See Kennedy*, 714 F.2d at 976.

Lillard's due process argument is meritless. Destruction of evidence is a constitutional problem only under extreme conditions, which were not alleged here. *See California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984); *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969).

## D. Aggregating Lab Capacities

■ Lillard urges that the court erred by adding the drug and chemical quantities from the November lab to the July amounts in calculating his base offense level because the November lab was not "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

Both labs were sophisticated and on-going, as evidenced by the equipment and chemicals recovered. It was not clear error for the district court to conclude implicitly that the November lab was part of the general scheme of manufacturing and thus could be included in offense level calculation. *See United States v. Turner*, 898 F.2d 705, 711 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

Lillard asserts incorrectly that the court's calculation of lab capacity is limited by the quantity of the least abundant precursor chemical. The court properly calculated the capacity of each lab by looking at all chemicals found there. *See United States v. Bertrand*, 926 F.2d 838, 846 (9th Cir.1991).

## E. Eighth Amendment

■ We reject Lillard's argument that his sentence violates the Eighth Amend-

---

tence of a year of supervised release, Lillard's six-month prison term could not be served simply by the passage of time.

3. The chemicals were used to calculate the capacity of the methamphetamine labs, which determined Lillard's base offense level.

ment because it is not proportional to the crime or to the sentence he would have received under Oregon law. The Eighth Amendment does not require harmonization among sentences imposed by different courts. *United States v. Zavala–Serra,* 853 F.2d 1512, 1518 (9th Cir.1988); *United States v. Meyer,* 802 F.2d 348, 353 (9th Cir.1986), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987).

AFFIRMED.