996 F.2d 1228
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ysidro Chilo ESPINOZA, Defendant-Appellant.
 No. 91-30284.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 1, 1993.
Decided July 1, 1993.
 
 Before: TANG, POOLE and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Ysidro Chilo Espinoza appeals his conviction for conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Espinoza argues that the district court erred in denying his motion to suppress evidence. We reject his argument and affirm.
 
 I.
 
 3
 On February 14, 1990, as part of an ongoing investigation of a heroin enterprise, an apartment located near McCormick Pier in Portland was placed under surveillance by the Drug Enforcement Administration (DEA) and the Portland Police. Espinoza was observed driving a blue 1982 Datsun, Oregon license plate PVJ 411, which had been connected with the heroin enterprise, from the apartment and making hand to hand exchanges with unidentified people in a nearby location. Espinoza was also observed leaving the apartment two times later that evening. Espinoza first left the apartment to go to the blue Datsun and move some things around inside the car for about five minutes before returning to the apartment. Espinoza then left the apartment fifteen minutes later, drove the car to a nearby location on Front Avenue, turned off the ignition and headlights, waited a few minutes, briefly turned on the ignition and the headlights, remained for a few minutes, and walked back towards the apartment.
 
 
 4
 On the evening of February 15, 1990, Espinoza and an unidentified person, who was carrying a portfolio and plastic bag, drove back to the apartment in the Datsun and entered the apartment. The two left the apartment and drove away about 30 minutes later. Espinoza dropped the person off, and returned to the Front Avenue location. Espinoza left the car and walked to other locations where he was observed making hand to hand transfers with at least two people. One of the people was a known heroin addict who admitted that he met Espinoza to pay off a debt.
 
 
 5
 Espinoza returned to the Datsun and drove it to an area two blocks away from an apartment house at 629 South Morrison that he walked to and entered. Much closer parking was available. Espinoza left the apartment about 30 minutes later and drove to 10th and Belmont where he began to drive around in circles around the block.
 
 
 6
 Later that evening, after Espinoza rolled through a stop sign, Portland Police Officers William Gray and Sean Pritchard decided to stop him. Pritchard approached Espinoza and asked him for his drivers license. Espinoza gave Pritchard a drivers license bearing the name "Steven Carrizo Lopez." Espinoza could not recite the address listed on the license. Gray, recognized Espinoza as someone he had arrested in 1987 for selling heroin near the McCormick Pier apartment house. Gray asked Espinoza if he had ever been arrested before and Espinoza responded that he had only been arrested on a driving under the influence charge. Espinoza said that the Datsun belonged to a friend and that he had borrowed the car an hour earlier. Espinoza denied having been at the 629 South Morrison apartment house earlier that evening. Gray told Espinoza that he and Pritchard had been following him and that they knew he was lying to them. Espinoza denied that he was selling drugs and told Gray that he could search the Datsun. A pat down search of Espinoza and a search of the Datsun yielded a pager, cash, heroin and keys to the McCormick Pier apartment.
 
 II.
 
 7
 Espinoza argues that the district court should have suppressed the evidence obtained based on his being stopped on a traffic violation because that stop was a pretext stop which violated his Fourth Amendment rights. Motions to suppress are reviewed de novo. The ultimate conclusion of the legality of the search is a mixed question of law and fact reviewed de novo. United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988). The underlying facts as found by the district court are reviewed for clear error. United States v. Espinosa, 827 F.2d 604, 608 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988).
 
 
 8
 An arrest or a stop may not be used as a pretext to search for evidence. United States v. Lefkowitz, 285 U.S. 452, 467 (1932); Taglavore v. United States, 291 F.2d 262, 265 (9th Cir.1961); United States v. Prim, 698 F.2d 972, 975-77 (9th Cir.1983). A determination of whether an arrest or stop is pretext depends on the officers' motivation or primary purpose. United States v. Mota, No. 91-50170, slip op. at 129-130 (9th Cir. January 8, 1993); Williams v. United States, 418 F.2d 159, 161 (9th Cir.1969), aff'd, 401 U.S. 646 (1971). Where it is clear that officers act based on their belief of a defendant's criminal activity, that activity, and not an unrelated minor offense, must be sufficient to justify their acts. See Prim, 698 F.2d at 975.
 
 
 9
 The district court found that there was no need to address the pretext issue because the evidence showed that the officers would have stopped Espinoza in the absence of a traffic violation. This finding is not clearly erroneous; in fact, it is undisputed. The district court's finding squares this case with United States v. Lillard, 929 F.2d 500 (9th Cir.1991). Lillard was stopped for speeding in Oregon by an officer who also knew about his suspected methamphetamine manufacturing; however, the officer testified that he would have stopped him even without knowledge of any suspected drug activity. Id. at 502. Similarly, the fact that the officers had two reasons to stop Espinoza does not necessarily make one pretext for the other.
 
 
 10
 The district court also found that the officers' surveillance of Espinoza provided it with a reasonable suspicion of criminal activity sufficient to justify the stop. The officers, who had Espinoza under surveillance for two days, saw Espinoza drive a car they had previously connected with heroin dealing, make several hand to hand transactions, including one with a known heroin addict, and drive and park the Datsun in a manner indicating that he was involved in drug dealing. The totality of the circumstances were clearly sufficient to constitute reasonable suspicion. See United States v. Mejia, 953 F.2d 461, 465 (9th Cir.1991), cert. denied, 112 S.Ct. 1983 (1992) (holding that less incriminating facts gathered during surveillance were sufficient to constitute reasonable suspicion). Because the officers had a reasonable suspicion of Espinoza's involvement in drug activity, their stop was lawful.
 
 
 11
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3