10 F.3d 809
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene Anthony TARINTINO, Defendant-Appellant.
 No. 93-50126.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Nov. 15, 1993.
 
 Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Tarintino was convicted by a jury of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1) and 846, of possession of methamphetamine for distribution, in violation of 21 U.S.C. Sec. 841(a)(1), and of aiding and abetting under 18 U.S.C. Sec. 2. Tarintino argues that his convictions should be reversed on four grounds. We affirm the convictions.
 
 
 3
 * Tarintino first claims that the district court erred in failing to suppress the fruits of a traffic stop. He contends that the stop was pretextual.
 
 
 4
 California Highway Patrol Officer Miguel Lizarraga pulled Tarintino over, issued him a traffic ticket, and confirmed his identity to police. The California Bureau of Narcotics Enforcement subsequently stopped Tarintino, searched his car, found large amounts of cash on his person, and arrested him.
 
 
 5
 It was undisputed in the district court that the highway patrol had been instructed by the police to "develop their own probable cause to stop" Tarintino. That in itself is not enough to require suppression, however. Officer Lizarraga testified that Tarintino was traveling at 80 miles per hour and that Lizarraga would have pulled the defendant over in any case. The district court found the defendant's rate of speed enough to establish probable cause for the stop.
 
 
 6
 In United States v. Lillard, 929 F.2d 500, 501-02 (9th Cir.1991), we rejected a similar claim. Lillard was suspected of manufacturing illegal drugs and was under surveillance. We held that the stop was not pretextual when it resulted from the combination of the facts that the defendant was suspected of manufacturing illegal drugs and was seen speeding. Lillard requires us to reject the defendant's argument.
 
 II
 
 7
 The defendant next claims that the information in the November 21, 1990 search warrant was stale. Because the affidavit detailed eight instances of the defendant's recent involvement in the illegal drug trade, we reject this claim.
 
 III
 
 8
 Defendant next claims that the November 23, 1990 search warrant affidavit contains a material omission which, if included, would have negated the magistrate's finding of probable cause. Appellant claims that the affidavit is missing any reference to the drugs seized during the November 21 search. Had the magistrate known of the seized evidence, Tarintino contends, he would have found no need for an additional search.
 
 
 9
 The record belies the defendant's contention. Paragraph four of the affidavit expressly discloses the results of the November 21 search. We therefore reject the defendant's third argument.
 
 IV
 
 10
 Tarintino's final argument is that his rights to due process, fair notice, effective assistance of counsel, and effective cross-examination were violated by DEA Agent Glaspy's failure to record the contents of his conversations with defense witness Rose Daniel, Tarintino's wife, in violation of agency rules. Daniel testified in Tarintino's defense that the defendant did not know of the methamphetamine she had buried in the back yard. On cross-examination, she was impeached with her prior inconsistent statements made to Agent Glaspy, whom she had told that she buried the drugs at the defendant's direction. Tarintino argues that government's failure to disclose the conversation that formed the predicate of the cross-examination violated his constitutional rights in two ways.
 
 
 11
 First, he claims that the failure to provide notes of the conversations constitutes a Brady violation. Second, he claims that it violated his right to effective cross-examination.
 
 
 12
 Because the government is only required to provide the defense with evidence "favorable to the accused," United States v. Bagley, 473 U.S. 667, 675 (1985), there is no constitutional violation in the government's failure to turn over incriminating impeachment evidence that it uses on cross-examination. Further, we have held that the government is not obligated to turn over statements of potential witnesses whom the government ultimately chooses not to have testify. United States v. Cadet, 727 F.2d 1453, 1469 (9th Cir.1984). It follows that because Ms. Daniel was a defense witness, her prior inconsistent statements, which tended to incriminate the defendant, did not have to be shared with the defense.
 
 
 13
 Defendant contends that had notes from Agent Glaspy's conversations with Daniel been available to him, he would have been able to cross-examine Glaspy more effectively and could have reversed the damage to his case that the impeachment of Daniel caused.[1] Once again, however, the prosecution is required to disclose evidence that would support a cross-examination only if it is favorable to the defendant. The fact that defendant, had he known of the statements, might have been better able to reduce their harmful effects on cross-examination, does not make the statements themselves favorable to him. Further, even if the contents of the conversations were considered favorable to the defense, it cannot be said that "the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678.[2]
 
 
 14
 The convictions are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Defendant suggests that the government engaged in misconduct by disclosing Daniel's grand jury testimony but hiding the fact that the government could impeach her. There is no support in the record for such an allegation. At several points before trial, the government indicated that if Daniel testified that the defendant lacked knowledge that the methamphetamine was buried in his yard, it could impeach her testimony with prior inconsistent statements
 
 
 [2]
 Indeed, the district court stated the following concerning Daniel's testimony: "I think there's no question that she perjured herself. And I'm not basing this on the contrary evidence from Agent Glaspy." ER 309