**UNITED STATES of America, Plaintiff,**

v.

**Roberta Elizabeth MATTEUCCI, Rodney Douglas Griffee, Dennis Errol Dutoit, Defendants.**

**Cr. No. 93-77-FR.**

United States District Court, D. Oregon.

Jan. 25, 1994.

Order Granting Clarification March 15, 1994.

---

**444**

Jack C. Wong, Kristine Olson Rogers, U.S. Attys., Frank Noonan, Asst. U.S. Atty., Portland, OR, for plaintiff.

Mark Austin Cross, Cross & McDonald, P.C., Portland, OR, for defendant Roberta Elizabeth Matteucci.

Colleen B. Scissors, Asst. Federal Defender, Portland, OR, for defendant Rodney Douglas Griffee.

Paul S. Petterson, James D. Lang, Portland, OR, for defendant Dennis Errol Dutoit.

## OPINION

FRYE, Judge:

The matters before the court are:

1) the motion of defendant Dennis Errol Dutoit to suppress statements (# 26);

2) the motion of defendant Dutoit to suppress evidence (# 27);

3) the supplemental motion of defendant Roberta Elizabeth Matteucci to suppress evidence (# 47); and

4) the motion of defendant Rodney Douglas Griffee to suppress evidence (# 62).

Each defendant has joined in the motions of the other defendants.

## FINDINGS OF FACT

On January 14, 1993, at approximately midnight, defendant Rodney Griffee was stopped by Clatsop County Deputy Sheriff Tom Bergin as Griffee was travelling in a motor home with a defective rear brake light. Defendant Dennis Dutoit was a passenger in the motor home. Deputy Bergin smelled the odor of methamphetamine coming from the motor home. Deputy Bergin asked Griffee for his driver's license. The driver's license that Griffee produced bore the name Rodney Bartell. Deputy Bergin also asked Dutoit for some identification. Dutoit presented an identification card. Deputy Bergin detected the odor of methamphetamine on Griffee's driver's license and the odor of marijuana on Dutoit's identification card. Deputy Bergin took the cards to his patrol car and determined that there were no warrants for the arrests of either Griffee or Dutoit.

Deputy Bergin then asked Griffee to show him the problem with the taillight. When Griffee opened the door to get out of the motor home, Deputy Bergin smelled the odor of methamphetamine. Griffee advised Deputy Bergin that he was aware of the problem with the taillight and had tried to fix it earlier that evening. Deputy Bergin then asked Griffee who owned the motor home. Dutoit told Deputy Bergin that the motor home was owned by a friend of his, Joe Taylor, and that he was in the process of buying it.

Deputy Bergin returned the driver's license to Griffee and the identification card to Dutoit and told Griffee that he was free to go but that he had smelled a strong odor of methamphetamine and would like to have Griffee explain the odor. Griffee told Deputy Bergin that he was against drug use. Deputy Bergin then asked if there were any weapons or drugs in the motor home. At first, Griffee said there were no weapons or drugs, but then Griffee told Deputy Bergin that there "might be" a rifle in the back of the motor home. Deputy Bergin asked if he could search the motor home. Griffee agreed. Deputy Bergin also asked Griffee to sign a written form giving his consent to search the motor home. Griffee signed his name as "Rodney Bartell" on the written form. While Griffee did not read the form before he signed it, he had been advised that it was a form which, if he signed, gave his consent to a search of the motor home.[1]

After Griffee signed the consent form, Deputy Bergin asked Dutoit to step out of the motor home. Deputy Bergin asked Griffee to return Dutoit's identification card to him and then to stand in front of the headlights of one of the vehicles so that he would be visible. Deputy Bergin told Dutoit he was free to go; however, Dutoit remained and Deputy Bergin advised Dutoit that Griffee had given Deputy Bergin written consent to search the motor home.

Dutoit advised Deputy Bergin that his dog, which was in the motor home, might not let the officers search the motor home. Therefore, Deputy Bergin waited for another officer to arrive before conducting a search of the motor home.

After Officers Kneaper and Pierce arrived, Deputy Bergin began the search of the motor home. The officers located a loaded .44 magnum pistol, a loaded .357 magnum pistol, books on the chemistry and the making of methamphetamine, and a bag of psilocybin mushrooms. For the ten or fifteen minutes that Deputy Bergin and Officer Kneaper were searching the motor home, Officer Pierce stood by with Griffee and Dutoit. At one point in the search, Officer Pierce went to his car to get his jacket. At that point, Dutoit told Sergeant Whistler that he wanted the officers to stop the search. Sergeant Whistler told Deputy Bergin, who then came out of the motor home.

Dutoit and Griffee were read their *Miranda* rights. Both men indicated that they understood their *Miranda* rights. Deputy Bergin then asked them where they were living, and they stated that they lived at a campsite in Spruce Run State Park. Griffee told the officers that he was living there with defendant Roberta Matteucci and their baby.

Some time after 1:00 a.m., Deputy Bergin and another officer arrived at Spruce Run State Park. At the campsite, they observed a motor home, a tent, a van, two cars, a three-wheel vehicle, a four-wheel vehicle, and a utility trailer. There were no other people at the park. Deputy Bergin knocked on the door of the motor home and asked Matteucci if they could enter. Matteucci let them in.

Once inside, the officers questioned Matteucci about methamphetamine production, drug possession and usage, and the manufacturing of drugs. The officers asked Matteucci if she would allow them to search the motor home and the surrounding area. At first, she refused to consent to a search, commenting that she did not think Griffee would want the police to search. Deputy Bergin informed her that Griffee was in custody, and he had consented to the search of the motor home on the highway. Deputy Bergin then told Matteucci, "if you want to let me search it, that's fine. If not, you know, we'll just have to continue talking here." Transcript, pp. 42–43.

Deputy Bergin also told Matteucci that the Children's Services Division would be notified. He advised her that her baby would be checked and could possibly be removed until Matteucci was found not to have been involved in the manufacture of methamphetamine. Thereafter, Matteucci signed a writing consenting to the search of the motor home. The motor home was then searched.

---

**1.** Griffee's testimony that Deputy Bergin told him that the consent form was a citation for the mechanical violation is not credible.

Deputy Bergin later obtained a search warrant and made a further search of the campsite. The police seized glassware, chemicals, chemical containers, and other items used in the manufacture of methamphetamine.

## CONTENTIONS OF THE PARTIES

The defendants contend that the testimony of Deputy Bergin should be discounted as unreliable and inconsistent with established scientific principles. The defendants further contend that the search of the motor home on the highway was unlawful because Griffee's consent was coerced, and Dutoit did not consent at all.

The government contends that the search of the motor home on the highway was lawful as a search pursuant to the automobile exception to the search warrant requirement and because Griffee consented to the search.

The defendants contend that the statements of Griffee and Dutoit regarding the location of the motor home should be suppressed. The government argues that these statements were made only after Griffee and Dutoit were advised of their *Miranda* rights and waived those rights.

The defendants contend that the search of the motor home located at Spruce Run State Park was unlawful because Matteucci was coerced into consenting to the search by the threats of the officers to take her baby, and therefore was not voluntary. The government argues that the consent of Matteucci was voluntarily given, and that even if the consent was not voluntarily given, the search was lawful pursuant to the automobile exception to the search warrant requirement.

## ANALYSIS AND RULING

1. *The Credibility of the Testimony of Deputy Bergin*

■ The testimony of Deputy Bergin is credible and not materially different from the testimony of others at the scene, except for the testimony of Griffee and Dutoit. The fact that Deputy Bergin failed to report in his initial radio call that he smelled methamphetamine is not persuasive. In that radio call, Deputy Bergin told the dispatcher where he was and indicated that he would like other officers to join him at the scene. A police officer need not specify the exact nature of his investigation over the radio in order to request assistance because of potential criminal activity.

The defendants argue that Deputy Bergin's description of the scene as "calm" contradicts the observations of the snowplow driver, Bruce Rummell. Although Rummell testified that Griffee was agitated and was moving his arms about after his conversation with Deputy Bergin, the testimony of Rummell is not inconsistent with the testimony of Deputy Bergin.

The defendants argue that the testimony of Bruce Rummell that the defendants were separated before they were interrogated controverts the testimony of Deputy Bergin, which is that he did not deliberately separate Griffee and Dutoit. Deputy Bergin testified that he asked Griffee to remain near the police car after he had informed Dutoit that he was free to leave. When Dutoit declined to leave, Deputy Bergin talked to him for a few minutes a few feet away from where Griffee was requested to stand. The court finds that the testimony of Deputy Bergin is not materially inconsistent with the testimony of Bruce Rummell, the snow plow driver.

The defendants contend that the testimony of Deputy Bergin that he did not shout at either Griffee or Dutoit when he told Griffee that he should stay near the back of the police car was controverted by the testimony of Bruce Rummell. Rummell, however, declined to testify as to the loudness of Deputy Bergin's directions to Griffee.

The defendants contend that Deputy Bergin's mistaken recollection of the direction in which the window rolled down is sufficient to discount his testimony as unreliable. Given the amount of time that has passed since this incident and the nature of this detail, the court cannot say that a mistake in recollection as to that point is sufficient to discount the credibility of Deputy Bergin.

Based upon a hypothetical situation similar to the facts here, Dr. Woodford testified that, in his opinion, it was not likely that Deputy Bergin could have smelled the odor of meth-

amphetamine through the window of the motor home. The defendants contend, therefore, that the testimony of Deputy Bergin that he smelled methamphetamine is inconsistent with established scientific principles. Dr. Woodford's testimony was based on his laboratory experience with the chemicals involved in the manufacture of methamphetamine.

Dr. Woodford testified that methamphetamine which is pure has no odor, but that methamphetamine which is poorly manufactured has an odor which is similar to the odor of cat urine and will linger on clothing and permeable materials, as well as other objects. Nonetheless, Dr. Woodford based his opinion that Deputy Bergin was not likely to have smelled the odor through the window on Bernoulli's principle, which concerns molecules in the airflow rather than on permeable objects.[2]

Deputy Bergin testified that he smelled the odor of methamphetamine when he approached the motor home, and that it appeared to be coming from the window. Dr. Woodford was not at the scene, and he did not have the temperature measurements of the interior and exterior of the motor home. Deputy Bergin has been extensively trained and is experienced in the identification of odors under a variety of conditions. The court accepts his testimony as true.

2. *Validity of the Search of the Motor Home Based on the Automobile Exception to the Search Warrant Requirement*

■ The government contends that the search of the motor home on the highway was valid because the motor home was stopped when the brake lights on the left rear failed to function, and thereafter the smell of methamphetamine gave the officers probable cause to search pursuant to the automobile exception to the search warrant requirement. The court finds that the stop of the motor home in this case was a legitimate traffic stop. *United States v. Fouche,* 776 F.2d 1398 (9th Cir.1985).

■ The government cites *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), to justify the search of the motor home pursuant to the automobile exception to the search warrant requirement. *Carney* holds that the automobile exception to the search warrant requirement applies to motor homes. However, as the United States Supreme Court discussed in *Carney,* "[t]he question remains whether, apart from the lack of a warrant, this search was unreasonable. Under the vehicle exception to the warrant requirement, '[o]nly the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize.'" *Id.* at 394, 105 S.Ct. at 2071, *quoting United States v. Ross,* 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). Thus, under *Carney,* the police must have had probable cause of a type sufficient to satisfy a magistrate in order to qualify under the automobile exception to the search warrant requirement.

The government argues that the search of the motor home was lawful because Deputy Bergin smelled the odor of methamphetamine and therefore had probable cause to search. The government cites *United States v. Lillard,* 929 F.2d 500, 502 (9th Cir.1991), and *United States v. Loucks,* 806 F.2d 208 (10th Cir.1986), to support this argument. In *Lillard,* the police suspected that the defendant was manufacturing methamphetamine when the police stopped him for speeding. As the officers approached the van, they smelled the odor of methamphetamine. This fact, coupled with the earlier suspicions that Lillard was manufacturing methamphetamine, was sufficient to support the conclusion that there was probable cause to arrest him. The authority to search in *Lillard* was based on the consent of the defendant. This case does not support the government's contention that probable cause to search without a warrant can be derived solely from an officer's detection of the odor of methamphetamine.

3. *The Validity of Griffee's Signed Consent to Search*

■ Griffee contends that his consent to search was coerced because Deputy Bergin

---

**2.** Bernoulli's principle holds that the greater exterior air pressure would have caused the smell to dissipate in the interior as any door or window was opened.

told him that he was signing a form notifying him of a vehicle violation, rather than a form consenting to a search. Griffee also argues that it was too dark for him to have read the form. The basis for Griffee's contention is his own testimony and the testimony of Rummell that Griffee was upset after signing the form consenting to the search. Deputy Bergin testified that Griffee was aware of the nature of what he was signing and was able to see the form without difficulty because of the headlights from his vehicle. Deputy Bergin's testimony is supported by the consent form itself, which requires an individual to sign in a relatively confined space. Griffee signed his alias, "Rodney A. Bartell," within the confines of that space. Rummell's testimony that Griffee was upset and moving his arms about is not sufficiently specific to support Griffee's version of the facts.

■ Griffee contends, in the alternative, that his consent was coerced because he was detained in the cold in a snowstorm for twenty minutes, and he thought Deputy Bergin intended to hold him indefinitely. To support his contention that he was being detained against his will at the time he signed the consent form, Griffee points to the testimony of Officer Pierce that when he arrived on the scene to assist, Deputy Bergin requested that Officer Pierce keep watch over Griffee and Dutoit during the search of the motor home. However, Officer Pierce arrived well after Griffee had signed the consent form, and his testimony does not address facts relevant to whether Griffee was coerced into signing the consent form.

The court finds that Griffee's statement that he believed that Deputy Bergin intended to detain him indefinitely at the time he signed the consent form is not credible. Before requesting that Griffee sign the consent form, Deputy Bergin had returned Griffee's driver's license and Dutoit's identification card. Griffee had the means to leave, and the vehicle was not blocked in such a way as to preclude him from doing so.

■ A consent is voluntary if it is freely given and not the product of duress or coercion. *United States v. Carrillo*, 902 F.2d 1405, 1411 (9th Cir.1990). Voluntariness is a question of fact to be determined by the totality of the circumstances. *United States v. Vasquez*, 858 F.2d 1387, 1389 (9th Cir. 1988). The fact that Griffee waited outside his vehicle in a snowstorm, without other factors, is not sufficient to render his consent to search involuntary.

■ The defendants argue that Griffee's consent to search was invalidated by Dutoit's refusal to consent to the search. The defendants cite *Lucero v. Donovan*, 354 F.2d 16, 21 (9th Cir.1965). *Lucero* applies when a party with equal or greater authority is present and refuses to consent. While Dutoit requested that the search be stopped after talking to Sergeant Whistler, Deputy Bergin had already obtained Griffee's consent to search in writing. The only evidence that Dutoit initially refused to consent is based on Dutoit's testimony, and his testimony is inconsistent with his action in removing the dog from the vehicle in order to allow the officers to search safely. Dutoit's testimony is further contradicted by his later testimony that, while the search was being pursued, he asked Officer Pierce if he had the right to stop it. Therefore, the rule of *Lucero* does not apply.

4. *The Validity of Deputy Bergin's Questions About Where the Defendants Were Living*

■ The defendants contend that the statements regarding the location of the motor home at Spruce Run State Park made by Griffee and Dutoit should be suppressed because they were made prior to a valid waiver of their *Miranda* rights. Deputy Bergin testified that he asked where Griffee and Dutoit were staying after both men were read *Miranda* warnings from a printed card and agreed that they understood them. Deputy Bergin's testimony was supported by the testimony of Officer Pierce. The court finds the testimony of the two officers credible.

5. *The Search of the Motor Home at Spruce Run State Park*

■ The defendants contend that Deputy Bergin and Officer Kneaper conducted an unlawful search of the motor home at Spruce Run State Park. The government relies on

the automobile exception to the search warrant requirement pursuant to *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *United States v. Cook*, 938 F.2d 149, 152 (9th Cir.1991), and Matteucci's consent pursuant to *United States v. Carrillo*, 902 F.2d 1405, 1411 (9th Cir.1990), to justify the search of the motor home at Spruce Run State Park.

Courts have created an automobile exception to the search warrant requirement in light of two general principles: 1) that vehicles are mobile and can be moved quickly out of the jurisdiction of the magistrate from whom the warrant could be sought; and 2) that people have a lesser expectation of privacy in their vehicles than in their homes. *United States v. Hamilton*, 792 F.2d 837, 842 (9th Cir.1986). In *Carney, supra*, 471 U.S. at 394, n. 3, 105 S.Ct. at 2070–71, n. 3, the United States Supreme Court provided some guidance in determining whether the automobile exception to the search warrant requirement applies to a motor home that "is situated in a way or place that objectively indicates that it is being used as a residence." The *Carney* Court stated:

> Among the factors that might be relevant in determining whether a warrant would be required in such a circumstance is its location, whether the vehicle is readily mobile or instead, for instance, elevated on blocks, whether the vehicle is licensed, whether it is connected to utilities, and whether it has convenient access to a public road.

*Id.* at 394, n. 3, 105 S.Ct. at 2070–71, n. 3. The Ninth Circuit Court of Appeals adopted these factors in *Hamilton*, 792 F.2d at 842.

In this case, the motor home was "snowed in" in a state park. To get to a public road, the driver of the motor home would have to go down a steep hill and travel several miles in the park. The road conditions and the steepness of the hill counsel against a finding that the motor home was mobile that evening. Furthermore, the motor home was used as the residence of Griffee and Matteucci and their baby. Griffee had informed Deputy Bergin that he was staying at Spruce Run State Park. Early in Deputy Bergin's conversation with Matteucci, Matteucci told Deputy Bergin that the motor home was used as their home because they had been "kicked out" of their apartment several weeks earlier. Under these facts, the court finds that the motor home was not readily moveable, and that the motor home was a residence. The court finds that the search of the motor home at Spruce Run State Park was not a search pursuant to the automobile exception to the search warrant requirement.

■ In the alternative, the government relies on the consent of Matteucci to validate the search. In *United States v. Hatley*, 999 F.2d 392, 394 (9th Cir.1993), the Ninth Circuit Court of Appeals ruled that:

> In connection with a motion to suppress evidence seized from the automobiles, the district court held that because appellant believed his child would be taken into custody if he refused to consent to the search, the consent was not voluntary. The record fully supports this conclusion. Deputy Lambert's manifestly improper behavior rendered defective the signed consent form as a basis for the admissibility of anything found in the defendant's cars.

The facts in this case are similar to the facts in *Hatley*. After Matteucci refused to consent to the search, Deputy Bergin told her that the Children's Services Division would be notified and her child could be taken into custody. Matteucci was alone in a park at 1:30 a.m. during a winter storm. It was reasonable for her to believe that Deputy Bergin could cause her baby to be removed. The government bears the burden of proving that the consent of Matteucci was voluntary. *United States v. Al-Azzawy*, 784 F.2d 890, 895 (9th Cir.1985), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986). The court finds that the government has not met its burden with regard to the consent of Matteucci. The motion to suppress evidence discovered during this particular search is granted.

## CONCLUSION

The supplemental motion of Matteucci to suppress evidence (# 47) is granted.

The motions of Dutoit to suppress statements (# 26) and to suppress evidence (# 27)

are denied. The motion of Griffee to suppress evidence (# 62) is denied.

## OPINION ON MOTIONS TO CLARIFY AND TO SUPPRESS EVIDENCE

The matters before the court are the motion of the United States for clarification (# 74), and the motion of defendant Dennis Errol Dutoit to join in the supplemental motion to suppress evidence of defendant Roberta Elizabeth Matteucci (# 77).

The motion of the United States for clarification (# 74) is GRANTED. The fourth amendment does not prohibit the seizure of evidence in plain view. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 2303, 110 L.Ed.2d 112 (1990). Evidence in plain view of the police officers in Spruce Run Park, a public park, is admissible at trial. Defendant Dutoit does not have standing to object to the searches of the mobile home or the van.

The motion of defendant Dutoit to join in the supplemental motion to suppress evidence of defendant Matteucci (# 77) is DENIED.

Defendants have "asked" the court to reconsider its ruling on the motion to suppress statements of defendant Dutoit. That issue is not properly before the court; therefore, the court will not reconsider the matter.

IT IS SO ORDERED.