**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ricardo S. SCARANO, Defendant–**
**Appellant.**

**No. 91–10143.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 20, 1992.

Decided Sept. 2, 1992.

As Amended Nov. 24, 1992.

582

Alan Ellis, Mill Valley, Cal., for defendant-appellant.

Ross W. Nadel, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before: CANBY, REINHARDT and LEAVY, Circuit Judges.

CANBY, Circuit Judge.

Ricardo Scarano appeals a sentence of 105 months of imprisonment, supervised release of five years, and restitution totalling $141,069.72. We vacate the sentence and remand for resentencing.

## BACKGROUND

Scarano pleaded guilty to a two-count superseding information. The information alleged that Scarano and several associates staged an automobile collision. Count one charged that Scarano filed a false claim with the Social Security Administration ("SSA") representing that he became totally disabled as a result of the collision. Count one further charged that Scarano caused the SSA to mail him a disability benefits check on May 3, 1990. He eventually collected $38,906 from SSA. Count two charged that Scarano mailed a false statement to the Guardian Life Insurance Company representing that he suffered a continuing total disability from the collision. He collected $102,163.72 from Guardian Life Insurance.

The plea agreement contained the following stipulations: (1) the sentencing guidelines apply to count one, but not to count two; (2) the offense charged in count one caused losses of $38,906, while the offense charged in count two caused losses of $102,163.72; and (3) for the purposes of section 2F1.1 of the sentencing guidelines, the total losses exceeded $120,000. The district court accepted the plea agreement.

With regard to count one, the guidelines offense, the district court calculated a base offense level of six. It then added seven levels pursuant to guidelines section 2F1.1(b)(1)(H) because the fraud scheme caused losses greater than $120,000. It added two more levels under section 2F1.1(b)(3) because Scarano had violated a judicial order in committing his offense. It added two levels because his offense involved "more than minimal planning." U.S.S.G. § 2F1.1(b)(2)(A). It added four more levels under section 3B1.1(a) because Scarano was an "organizer or leader" of the fraud scheme. Finally, the district court denied a two-level reduction for acceptance of responsibility. The resulting offense level was 21.

In calculating Scarano's criminal history, the district court included Scarano's prior conviction for mail fraud, unlawful structuring of currency transactions, and subscribing to a false tax return. *See United States v. Scarano*, 956 F.2d 1169 (9th Cir. 1992) (unpublished disposition). As a result, Scarano was placed in criminal history category IV.

The court ultimately[1] sentenced Scarano to the statutory maximum term of sixty months imprisonment on count one, to be followed by a five-year term of supervised release. It also imposed a fine of $75,000. On count two, the court sentenced Scarano to a consecutive term of forty-five months. The aggregate sentences of imprisonment and the fine were ordered to be concurrent with the prison sentence and fine imposed for his prior offenses. Finally, the court

---

**1.** The court initially imposed a slightly longer sentence on count two, but resentenced because the longer sentence failed to accomplish the court's intention of making the present sentences concurrent and coterminous with Scarano's prior sentence.

ordered restitution of $38,906 to SSA on count one, and of $102,163 to Guardian on count two.

Scarano now appeals the district court's sentence.

## DISCUSSION

*Violation of a "Judicial Order"*

■ Guidelines section 2F1.1(b)(3)(B) provides: "If the offense involved ... violation of any judicial or administrative order, injunction, decree or process, increase by 2 levels." Scarano committed the present offenses while under a bail order containing a condition that he commit no crimes. The district court concluded that Scarano's bail order was a "judicial order" for purposes of section 2F1.1 and increased his base offense level by two. We review *de novo* the district court's interpretation of the guidelines. *United States v. Niven,* 952 F.2d 289, 291 (9th Cir.1991).

■ We disagree with the district court's interpretation of "judicial order" in section 2F1.1(b)(3)(B). That section adds levels for violation of a judicial order only in the course of committing fraud. No reason comes to mind why violation of a general bail condition should add offense levels for fraud but not for other crimes.[2] Moreover, we must interpret section 2F1.1 in a manner that does not render other guidelines provisions inconsistent, meaningless, or superfluous. *See Boise Cascade Corp. v. Environmental Protection Agency,* 942 F.2d 1427, 1432 (9th Cir.1991). Two guidelines sections address enhanced sentences for defendants who commit offenses while released under a bail order. Section 2J1.7 requires a three-level enhancement for defendants who violate the Bail Reform Act by committing offenses while on release. This provision is inconsistent with the two-

level enhancement required by the district court's interpretation of section 2F1.1. Section 4A1.3 allows the district court to depart upward if "the defendant was pending trial, sentencing or appeal or another charge at the time of the instant offense." U.S.S.G. § 4A1.3(d). This section takes into account Scarano's circumstances and renders the district court's broad interpretation of section 2F1.1 duplicative. In sum, we conclude that the Sentencing Commission did not intend to include general bail conditions among the judicial orders covered by section 2F1.1. The district court, therefore, erred by enhancing Scarano's base offense level under section 2F1.1(b)(3)(B).

*Total Losses; Offense Level*

The district court found that Scarano's fraud scheme resulted in a total loss of $141,069.72. On the basis of that finding, the court increased Scarano's base offense level by seven levels from 6 to 13 pursuant to section 2F1.1(b)(1)(H).[3] The court arrived at its finding by adding the $38,906 loss associated with the social security fraud charged in count one and the $102,163 loss associated with the mail fraud charged in count two. Scarano argues that the district court erred by including in its calculation losses associated with counts dismissed pursuant to the plea agreement.

■ The record indicates that the district court did not rely on counts that had been dismissed pursuant to a plea agreement; it used only the losses associated with the two counts contained in the superseding information. Thus, even if we assume that *United States v. Fine,* 946 F.2d 650, 651–52 (9th Cir.1991), *rehearing granted,* 963 F.2d 1258 (9th Cir.1992), and *United States v. Castro–Cervantes,* 927 F.2d 1079, 1081–82 (9th Cir.1991) (amended opinion), are

---

**2.** Scarano argues that 2F1.1(b)(3)(B) encompasses only judicial and administrative orders specifically enjoining particular fraudulent schemes. We need not decide that issue; it is enough for present purposes that we decide that

section 2F1.1(b)(3)(B) does not encompass general conditions in a bail order.

**3.** The amount of money lost as a result of the fraud is a specific offense characteristic that

still valid authorities,[4] they do not apply here. In both of those cases, the district courts included losses associated with charges dismissed pursuant to a plea agreement in their calculations of the total losses caused by the defendants' frauds. This court reversed because "to let the defendant plead to certain charges and then be penalized on charges that have, by agreement, been dismissed is not only unfair; it violates the spirit if not the letter of the bargain." *Fine*, 946 F.2d at 652 (*quoting Castro–Cervantes*, 927 F.2d at 1082); *see also United States v. Faulkner*, 952 F.2d 1066, 1069–71 (9th Cir.1991). The district court in this case did not deprive Scarano of the benefit of his plea bargain. On the contrary, Scarano agreed in the plea agreement that the total losses exceeded $120,000 for the purposes of section 2F1.1(b).

Scarano nevertheless argues that his offense level should have been calculated by the amount of the check alleged actually to have been mailed in count one, $580, rather than the amount of the total scheme to defraud the SSA of $38,906. He contends that his stipulation that the total losses exceeded $120,000 could not bind him to a sentence unauthorized by law. *Cf. United States v. Snider*, 957 F.2d 703, 706–07 (9th Cir.1992) (stipulation cannot bind defendant to pay more restitution than statute specifies).

■ The district court's calculation of losses for purposes of the base offense level was not unlawful, however.[5] On the contrary, section 1B1.3 required the district court to determine the level of loss on the basis of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2);[6] *accord* U.S.S.G. § 2F1.1, application note 6

("The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction"); *see also Niven*, 952 F.2d at 291; *United States v. Newbert*, 952 F.2d 281, 283–84 (9th Cir.1991) (permitting the district court to include losses associated with uncharged state law violations), *cert. denied*, —— U.S. ——, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992); *United States v. Restrepo*, 903 F.2d 648, 652–53 (9th Cir.1990), *modified on other grounds*, 946 F.2d 654 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). Because there is no dispute that the losses associated with counts one and two arose out of a common scheme or plan, the district court was required to take into account all losses associated with both counts when determining the appropriate offense level under section 2F1.1(b). Accordingly, we conclude that the district court did not err in calculating the amount of loss for purposes of establishing the offense level.

*Total Losses; Restitution*

■ Relying on *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), and *United States v. Snider*, Scarano argues that the district court ordered restitution in excess of that permitted by law. *Hughey* interpreted the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3579, as permitting courts to order restitution only for losses caused by the conduct underlying the defendant's offense of conviction, and not for related conduct. *Hughey*, 495 U.S. at 415–20, 110 S.Ct. at 1981–84. In *Snider*, this court concluded that a defendant could not be required to pay restitution for conduct beyond the offense of conviction even if the

---

determines whether the base offense level of six should be increased. U.S.S.G. § 2F1.1(b)(1).

**4.** This court vacated *Fine* and an *en banc* panel of the court is now considering *Fine* and *Castro–Cervantes*.

**5.** At this point in the opinion, we deal only with the offense level for count one. We discuss later the question whether the district court

improperly imposed double punishment by including losses from both counts in calculating the offense level for count one, and then imposing a consecutive sentence on count two.

**6.** Section 1B1.3(a)(2) applies because fraud is an offense "of a character for which § 3D1.2(d) would require grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2) and application note 2.

plea agreement so provided.[7] *Snider*, 957 F.2d at 706–07.

Neither *Hughey* nor *Snider* is of aid to Scarano, however, for the restitution ordered in his case did not go beyond the offenses of conviction.[8] Count one of the superseding information alleges a scheme to defraud SSA of $38,906. It also alleges that, to help execute that scheme, Scarano caused to be deposited in the mail one treasury check of a lesser amount, but the fraud charged in count one is clearly not limited to the amount of that check. Similarly, count two alleges a scheme to defraud Guardian of $102,163.72, and alleges that in furtherance of that fraud, Scarano caused a statement of his physical condition to be placed in the mail. The valueless physical statement does not limit the amount of the fraud expressly charged in count two. Restitution in the amounts of $38,906 and $102,069.72 was consequently proper because in each instance it did not exceed "the loss caused by the conduct underlying the offense of conviction." *Hughey*, 495 U.S. at 420, 110 S.Ct. at 1984; *see United States v. Sharp*, 941 F.2d 811, 815 (9th Cir.1991). Nor was there any doubt as to the amount of the losses; Scarano stipulated to them. *See United States v. Gering*, 716 F.2d 615, 625 (9th Cir.1983) (amount of loss must be established by proof at trial, judicial determination, or some other consensual means). The district court accordingly did not run afoul of *Hughey* or *Snider*, nor did it otherwise err in ordering restitution totaling $141,069.72.

*Consecutive or Concurrent Sentences*

■ A. The district court sentenced Scarano under the guidelines for count one, but did not use the guidelines to determine Scarano's sentence for count two. Scarano argues that the district court should have sentenced him under the guidelines for both count one and count two. We review *de novo* a district court's determination as to the applicability of the guidelines. *United States v. Gray*, 876 F.2d 1411, 1418 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).[9]

■ Scarano argues that his mail fraud was a "continuing offense" that was not completed until after the November 1, 1987 effective date of the guidelines. Thus, he contends that he should have been sentenced under the guidelines for count two. This court has already concluded, however, that mail and wire fraud are not continuing offenses: "Each offense is complete when the fraudulent matter is placed in the mail or transmitted by wire, respectively." *Niven*, 952 F.2d at 293. Scarano mailed his false statement of disability to Guardian Life Insurance on May 8, 1986. Thus, Scarano completed the mail fraud before November 1, 1987. The district court properly declined to apply the guidelines to count two.

Scarano argues that *Niven* conflicts with *United States v. Angelica*, 859 F.2d at 1393. *Angelica* held that a defendant could be required to pay restitution under the VWPA for all of the losses caused by his mail fraud scheme, even though most of the fraudulent transactions occurred prior to January 1, 1983, because the scheme extended beyond the VWPA's effective date of January 1, 1983. *Id.* at 1392–93. Necessary to that decision was the court's conclusion that "[t]he offenses of mail and wire fraud ... involve both the use of the mails or interstate wire or radio communications and a fraudulent scheme similar to the ongoing offense of conspiracy." *Id.* at 1393 (citing *Phillips v. United States*, 679 F.2d at 196).

---

7. Effective November 29, 1990, Congress provided that for offenses involving a scheme or conspiracy, or when a greater amount is agreed to in a plea bargain, restitution may be ordered beyond the loss specified in the count of conviction. 18 U.S.C. § 3663(a)(2), (3). Scarano's offense predates Congress's action, and is unaffected by it.

8. Our resolution of this issue makes it unnecessary for us to address the effect of the apparent conflict between *Snider* and the subsequent decision in *United States v. Soderling*, 970 F.2d 529, 532–34 (9th Cir.1992).

9. Scarano stipulated in the plea agreement to treatment of count two as a non-guidelines offense, but objected at the sentencing hearing to the imposition of a non-guidelines sentence for count two. We assume, without deciding, that Scarano did not waive this issue by signing the plea agreement.

We do not read *Angelica* as conflicting with *Niven's* interpretation of the federal mail and wire fraud statutes. Rather, *Angelica* interprets the VWPA and defines the scope of the losses that may be included in a restitution order under that statute. We conclude, therefore, that *Angelica* can be distinguished from *Niven* as an interpretation of the VWPA. *Niven* controls this portion of Scarano's case. Accordingly, the district court did not err by sentencing Scarano for count two without resort to the guidelines.

■ B. The district court ordered that Scarano's sentences for count one and count two run consecutively. Scarano accurately points out that the district court took the severity of his count two offense into account when it added seven levels to his base offense level for count one under section 2F1.1. He argues that imposing consecutive sentences for counts one and two therefore results in double punishment for the conduct underlying count two.

Nothing in the guidelines or the Sentencing Reform Act expressly precluded the district court from requiring that Scarano serve his non-guidelines sentence consecutively to his guidelines sentence. *United States v. Watford*, 894 F.2d 665, 669 (4th Cir.1990); *accord United States v. Lincoln*, 925 F.2d 255, 256–57 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2838, 115 L.Ed.2d 1006 (1991); *United States v. Garcia*, 903 F.2d 1022, 1024–26 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 364, 112 L.Ed.2d 327 (1990). This court concluded in *Niven*, however, that to construe the guidelines to permit a consecutive sentence in circumstances like Scarano's would potentially violate the Double Jeopardy clause. *Niven*, 952 F.2d at 293–94. In *Niven*, the district court incorporated the losses caused by a non-guidelines fraud count into the calculation of total losses associated with the guidelines counts and enhanced the defendant's sentence under section 2F1.1 accordingly. *Id.* at 293. The district court then sentenced the defendant to five years imprisonment for the non-guidelines count to run consecutively to the fifty-one months sentence imposed for the

guidelines counts. *Id.* We vacated the sentences:

> The record is unclear whether the district court prevented multiple punishment by rendering a shorter pre-Guidelines sentence than it would have otherwise, because the court foresaw that it would be taking the total amount of losses into account when sentencing as to the Guidelines counts. Hence, we remand and direct the court to make an express finding as to the sums of monies lost as a result of the offenses underlying the pre-Guidelines counts and Guideline counts, and to calculate the Guidelines sentence solely with reference to losses not considered in imposing the pre-Guidelines sentence. Alternatively, the court may aggregate the amount of losses in calculating the offense level for the Guidelines sentence, so long as it imposes concurrent sentences for the pre-Guidelines and Guidelines offenses.

*Id.* at 294. Scarano was sentenced before *Niven* was decided, so the district court did not have the benefit of that opinion. *Niven* now makes clear, however, that in order to avoid double punishment, the district court in this case was required to make an election that it did not ·make. The district court both incorporated the losses from count two into its calculation of total losses for its guideline sentence on count one, and imposed consecutive sentences. Accordingly, we vacate the sentence and remand to the district court for imposition of a new sentence.

### *"Organizer or Leader"*

■ The district court found that five people participated in the staged automobile collision that was charged as part of the social security fraud and that Scarano was their organizer and leader. It accordingly added four levels to Scarano's offense level. *See* U.S.S.G. § 3B1.1(b). Scarano argues that the district court erred by looking beyond the narrow offense of conviction charged in count one to determine how many people participated in the broader fraud scheme. We review the district court's finding that Scarano was an "organizer or leader" for clear error. *United*

*States v. Mares–Molina,* 913 F.2d 770, 773 (9th Cir.1990). We review the district court's legal interpretation of the guidelines *de novo. United States v. Zweber,* 913 F.2d 705, 708 (9th Cir.1990).

■ The introductory commentary to Part B of Chapter 3 makes clear that the district court acted properly when it looked to the overall fraud scheme:

> The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)–(4), and not solely on the basis of elements and acts cited in the count of conviction.

U.S.S.G. Chapter 3, Part B, Introductory Commentary; *see also United States v. Lillard,* 929 F.2d 500, 503 (9th Cir.1991). Section 1B1.3(a)(1) includes in the definition of relevant conduct

> all acts or omissions committed or aided or abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a)(1). The staged collision was a necessary precursor to Scarano's social security fraud and, therefore, constituted an act in furtherance of that offense. The district court did not err in its interpretation of section 3B1.1.

Scarano points out that the introductory commentary to Part B of Chapter 3 was added as part of a November 1990 amendment to the guidelines. *See* U.S.S.G. Appendix C at 163, ¶ 345. He argues that using this commentary to calculate his sentence for crimes that he committed before November 1990 violates the *ex post facto* clause. This court has already determined that the introductory commentary to Chapter 3 merely clarified section 3B1.1. *Lillard,* 929 F.2d at 503. Amendments that clarify, rather than substantively change, the guidelines do not present *ex post facto* issues when they are applied retrospectively. *Restrepo,* 903 F.2d at 656. Thus, Scarano's argument fails.

*Acceptance of Responsibility*

■ The district court held that Scarano was not entitled to a two-level reduction for acceptance of responsibility pursuant to section 3E1.1.[10] We review for clear error the district court's determination that Scarano did not accept responsibility, *United States v. Rosales,* 917 F.2d 1220, 1222 (9th Cir.1990), and we accord great deference to the sentencing judge's determination, *see* U.S.S.G. § 3E1.1; application note 5.

■ Scarano argues that the district court improperly denied the two-level reduction because Scarano, while admitting his guilt in committing a fraud, stated that he also believed that he was entitled to social security disability benefits based on his medical condition. He argues that the district court was prohibited from considering whether he accepted responsibility for any act other than the elements of the offense of conviction. *See United States v. Stout,* 936 F.2d 433, 434–35 (9th Cir. 1991); *United States v. Piper,* 918 F.2d 839, 841 (9th Cir.1990). The district court, however, did not expressly base its decision on Scarano's statements regarding the social security benefits, and nothing in the record supports such an assumption. Instead, the court appears to have relied on the probation officer's statement, and the government's argument, that Scarano had shown no remorse for having committed his offense of conviction. *See United States v. Hall,* 952 F.2d 1170, 1171 (9th Cir.1991); *United States v. Cooper,* 912 F.2d 344, 346 (9th Cir.1990). We conclude that the district court did not clearly err in finding that Scarano did not satisfy his burden of proving that he accepted responsibility.

*Criminal History*

■ The district court added a total of three points to Scarano's criminal history

---

**10.** The relevant portion of section 3E1.1 reads: "(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." U.S.S.G. § 3E1.1(a).

score for his prior convictions for unlawful structuring of currency transactions, mail fraud, and subscribing to false tax returns. Scarano was sentenced for all three of these crimes on the same day and received a five-year sentence for each conviction; the district court counted the three as one sentence. Scarano contends that this sentence should not have been considered a "prior sentence" under section 4A1.2 because it involved conduct, a fraud based on the same staged automobile accident, that was "part of the instant offense." U.S.S.G. § 4A1.2. He argues that the phrase "part of the instant offense" should be interpreted to mean "part of the same criminal scheme."

Scarano's prior mail fraud conviction and his present offenses of conviction may have the staged automobile collision in common, but that fact does not necessarily make them part of the same offense. We need not decide that question, however, because of the separate nature of the other prior offenses for which he was sentenced. The prior mail fraud conviction was based on substantial conduct unrelated to the staged collision. The memorandum disposition for the appeal of the prior convictions states that Scarano derived the money used in the unlawful currency transactions from "mail fraud schemes he engaged in between *1979 and 1986*" and "other criminal activity." *United States v. Scarano*, No. 90–10332, slip op. at 2 (9th Cir. March 11, 1992) [956 F.2d 1169 (table) ] (emphasis added). Scarano's mail fraud schemes included "submitting fraudulent insurance claims for stolen or damaged automobiles, bodily injuries suffered in staged accidents, and home burglaries and fires." *Id.* at 1 [956 F.2d 1169 (table) ]. Further, the convictions for subscribing to false tax returns and unlawful structuring of financial transactions necessarily involved conduct independent of the staged collision or any other element of the instant offenses. The district court did not err, therefore, in finding the prior sentence to be based on conduct not part of the present offense of conviction. It calculated the criminal history correctly.

## Supervised Release

The district court imposed a five-year term of supervised release on count one. The parties agree that the district court erred; the maximum term of supervised release permitted by the guidelines and statute for mail fraud is three years. *See* U.S.S.G. § 5D1.2(b)(2); 18 U.S.C. §§ 3559(a)(4), 3583(b)(2).

## CONCLUSION

The district court erred in increasing Scarano's offense level under U.S.S.G. § 2F1.1(b)(3)(B) for violation of a judicial order. It also erred in imposing a consecutive sentence on count two after taking into account the losses arising from the offense in count two in determining the offense level under count one. Finally, it erred in imposing a five-year term of supervised release on count one. With respect to all other issues raised on this appeal, we find no error.

The district court's sentence is VACATED and the matter is REMANDED for imposition of a new sentence.