990 F.2d 1262
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ceferino GARCIA, aka Perry Garcia, Defendant-Appellant.
 No. 92-50430.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1993.*
Decided March 18, 1993.
 
 Before WALLACE, Chief Judge, and FARRIS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ceferino Garcia appeals from his sentence, imposed following his conviction by guilty plea, for conspiracy to make a false claim to a government agency in violation of 18 U.S.C. § 286. Garcia contends that the district court erred by (1) increasing his offense level under the United States Sentencing Guidelines for more than minimal planning, and (2) ordering him to pay restitution in the amount of $38,151. We have jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 A. More Than Minimal Planning
 
 3
 We review for clear error the district court's finding that a defendant's conduct involved more than minimal planning. United States v. Notrangelo, 909 F.2d 363, 364-66 (9th Cir.1990).
 
 
 4
 Garcia and his coconspirators engaged in a scheme to defraud the United States by submitting false tax returns in the names of several low-income persons and collecting the tax refunds claimed on the fraudulent returns. Using a computer software program called "Turbo Tax," Garcia prepared a total of seven false tax returns and W-2 forms using names and Social Security numbers provided by coconspirator Sprague. The district court increased Garcia's base offense level for more than minimal planning under U.S.S.G. § 2F1.1(b)(2)(A) because the scheme involved repeated acts over a period of time and several steps were involved in the filing of each fraudulent return.
 
 
 5
 Garcia argues that use of the Turbo Tax computer software made the offense less complicated than it would have been had he prepared the false returns by hand. He further contends that because Sprague purchased the software and furnished him with the names and Social Security numbers, his own role was "basic and uncomplicated" even if the scheme itself was complicated enough to merit more than minimal planning. These contentions lack merit.
 
 
 6
 The district court must add two levels to a defendant's base offense level for fraud "[i]f the offense involved more than minimal planning." U.S.S.G. § 2F1.1(b)(2)(A).
 
 
 7
 "More than minimal planning" means more planning than is typical for commission of the offense in a simple form.
 
 
 8
 * * *
 
 
 9
 "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.
 
 
 10
 U.S.S.G. § 1B1.1, comment. (n.1(f)); United States v. Donine, No. 92-50309, slip op. 933, 938 (9th Cir. Feb. 3, 1993) (upholding adjustment applied to stockbroker who stole repeatedly from clients over a year and a half because "[t]he thefts were not the work of a master criminal but they were neither simple nor unsophisticated"). Specific offense characteristics described in Chapter Two of the Guidelines Manual are applicable to "all acts and omissions ... for which the defendant would otherwise be accountable," including "the conduct of others in furtherance of the execution of [a] jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1) and comment. (n. 1).
 
 
 11
 Here, the district court found that the scheme, taken as a whole, required more than minimal planning because it involved repeated acts and use of the computer to create returns that would pass initial scrutiny at the Internal Revenue Service. This finding is not clearly erroneous. See U.S.S.G. § 1B1.1, comment. (n. 1(f)); Donine, No. 92-50309, slip op. at 938. The district court also found that the adjustment was applicable to Garcia because the offense involved more than minimal planning, whether or not Garcia himself engaged in the planning. We agree. See U.S.S.G. § 1B1.3(a)(1) and comment. (n. 1); cf. United States v. Scarano, 975 F.2d 580, 584 (9th Cir.1992) (using relevant conduct under section 1B1.3 to calculate offense characteristics under section 2F1.1). Accordingly, the adjustment was appropriate.
 
 B. Restitution
 
 12
 We review for abuse of discretion a restitution order imposed within statutory limits. United States v. Koenig, 952 F.2d 267, 274 (9th Cir.1992).
 
 
 13
 The Victim and Witness Protection Act (VWPA) authorizes the district court to order restitution to any victim of an offense under Title 18, United States Code. 18 U.S.C. § 3663(a); Koenig, 952 F.2d at 274. The Guidelines provide that the district court "shall" order restitution if it is authorized under 18 U.S.C. §§ 3663-64. U.S.S.G. § 5E1.1. The commentary notes that the district court has only limited authority to deny restitution to the victim. Id., comment. (backg'd). When fashioning a restitution order, "[t]he sentencing judge may base findings on the presentence report or other testimony or evidence supported by a preponderance of the evidence." Id. (citing 18 U.S.C. § 3664(d)). Neither the VWPA nor Fed.R.Crim.P. 32 requires the district court to enter formal findings of fact to support an order of restitution. United States v. Cloud, 872 F.2d 846, 855 n. 11 (9th Cir.), cert. denied, 493 U.S. 1002 (1989); United States v. Cannizzaro, 871 F.2d 809, 811-12 (9th Cir.) (no error where PSR contained sufficient information for district court to consider section 3664 factors, defendant did not challenge PSR, and district court made "specific references" to PSR during sentencing hearing), cert. denied, 493 U.S. 895 (1989).
 
 
 14
 Garcia concedes that the amount of restitution ordered matches the loss caused by the offense, but argues that the district court erroneously ordered restitution without first considering the factors described in 18 U.S.C. § 3664.[1] He further concedes that the PSR contained ample discussion of the relevant factors, but contends that the district court did not sufficiently adopt the findings of the PSR because the court did not specifically refer to the PSR's discussion of restitution. These contentions lack merit.
 
 
 15
 The PSR calculated the amount of loss to the United States, fully discussed Garcia's financial circumstances, and stated the district court's procedural obligations under the VWPA. Garcia did not contest his ability to make restitution. The district court's repeated references to the PSR made it clear that the court had read and considered the report. On this basis, we conclude that the district court discharged its responsibilities under section 3664.[2] See Cannizzaro, 871 F.2d at 812.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 These factors include the amount of loss sustained by the victim(s), the financial resources of the defendant, and the financial needs and earning ability of the defendant and the defendant's dependents. 18 U.S.C. § 3664(a). Once the amount of loss has been established, the defendant bears the burden of showing why restitution should be delayed or denied due to the financial needs of the defendant or his/her dependents. See id., § 3664(d)
 
 
 [2]
 Garcia also contends that the district court erroneously relied on the harm caused to taxpayers by tax fraud as a factor underlying its decision to impose restitution, because that is not a factor authorized by section 3664. This argument borders on frivolous. Although the district court made reference to the damage caused to taxpayers by tax fraud, it did so in the context of explaining to Garcia why his crime was a serious one meriting both incarceration as well as restitution. Such comments are clearly within the district court's discretion