8 F.3d 33
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Ian SILVER, Defendant-Appellant.
 Nos. 91-50776, 91-60781.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1993.
Submission Withdrawn June 11, 1993.
Resubmitted Aug. 25, 1993.
Decided Aug. 30, 1993.
 
 Before FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Silver appeals the sentences imposed for mail fraud and counterfeiting violations. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988). We remand for compliance with Federal Rule of Criminal Procedure 32(c)(3)(D). However, we reject the contention that imposition of consecutive Guidelines and non-Guidelines sentences constitutes double punishment.
 
 
 3
 Silver pled guilty to three counts of mail fraud and one count of possession of counterfeit government obligations. The mail fraud crimes, violations of 18 U.S.C. § 1341 (1988), charged in second superseding indictment No. CR 88-316(B)-TJH, netted Silver perhaps as much as $1.2 million. Silver, a contractor supplying certain low-technology parts to the Department of Defense, certified that his company, Aerotech Industries, had shipped conforming parts that entitled it to payment under the Department's fast payment program. In fact, no such conforming shipments had been made.
 
 
 4
 After his arrest several years later, police officers executing a search warrant at Silver's home discovered $190,650 in counterfeit United States currency hidden in an air conditioning duct. The government, in information No. CR-91-229-TJH, charged Silver with violating 18 U.S.C. § 472 (1988). The mail fraud (a pre-Guidelines offense) and counterfeiting (a Guidelines offense) cases were consolidated for all purposes following Silver's guilty pleas on April 1, 1991.
 
 
 5
 The district court sentenced Silver to twenty-one months for the counterfeiting violation, and a total of eight years for the mail fraud crimes, the latter to run consecutively to the former.
 
 I.
 
 6
 Silver contends that the district court's failure to resolve certain alleged factual inaccuracies in the PSR requires remand. We review de novo compliance with Federal Rule of Criminal Procedure 32. United States v. Maree, 934 F.2d 196, 199 (9th Cir.1991).
 
 Rule 32(c)(3)(D) requires that
 
 7
 [i]f the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.
 
 
 8
 Fed.R.Crim.P. 32(c)(3)(D). The Ninth Circuit requires "strict compliance" with the rule's conditions; the sentencing court must either "make a finding as to the accuracy of the challenged factual proposition or ... indicate that the court is not taking it into consideration." United States v. Garfield, 987 F.2d 1424, 1428 (9th Cir.1993). The failure to do so requires remand. Id.; see also United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc).
 
 
 9
 Silver filed a document entitled "Defendant's Position Re Sentencing Factors" setting forth his response to the PSR filed in Case No. 91-229, and his attorney argued at sentencing that Silver wished to have certain "factual corrections" made to that PSR.[1] In all, nine areas of concern were identified. The government responded orally at sentencing to all nine. The court agreed with Silver as to two areas, and ordered the offending paragraphs struck from the PSR. It ordered that a section heading ("Pending Charges ") be struck. Further, it granted Silver's request for a two-point acceptance of responsibility adjustment. However, as to the other five, the district court failed either to make a finding or to rule that no finding would be necessary because the controverted material would not be considered in sentencing. Instead, apparently agreeing with the government that no factual inaccuracy had been identified, it simply ordered that Silver's attorney's remarks "be transcribed and appended to the Report that goes forward and indeed her entire position paper will go forward together with the Report itself."[2]
 
 
 10
 This circuit's interpretation of Rule 32(c)(3)(D), though strict, does permit compliance "in any manner which fairly indicates the resolution of the controverted matters." Fernandez-Angulo, 897 F.2d at 1517 n. 4 (emphasis added). At oral argument, Silver's counsel correctly emphasized two unresolved areas of concern; only these require remand.
 
 
 11
 A. The Name Change. Having related Silver's 1986 name change from Richard Silver to Richard Taylor, the probation officer conveys the following information in p 64 of the PSR:
 
 
 12
 64. The U.S. Attorney's Office (District of Arizona) has indicated that his name change is void due to the fraudulent and false representations contained within the Affidavit upon which the Order is based. Colorado requires residency to change a citizen's name and the defendant has claimed residency in Arizona from January, 1984, until December 5, 1990.
 
 
 13
 PSR (91-229) at 12. Silver contended both that District of Arizona officials may not be the appropriate source as to the legitimacy of his name change in Colorado, and that "[t]he fact remains [that the] name was changed by an order of the court and so far as we know to this date has not been ... set aside or held to be unlawfully obtained in any fashion." The government argued in response that no factual inaccuracy had been identified. The court's ruling appending the transcript of the sentencing hearing to the PSR does not comply with Rule 32(c)(3)(D)'s requirements. On remand, the court is directed to either resolve the controversy, or indicate that it did not take the name change matter into consideration when sentencing Silver.
 
 
 14
 B. Bearer Bonds. Paragraph 97, one of several under the general heading "Defendant's Ability to Pay," purports to discuss certain bond purchases by Silver:
 
 
 15
 According to the case agent, the defendant purchased 350,000 shares of Puerto Rican Commonwealth bearer bonds for $306,000 on September 15, 1983. These bonds are redeemable on July 1, 1998, and collect interest at the rate of 8 percent. On September 16, 1983, the defendant purchased 100,000 shares of Puerto Rican Water Reservoir Authority Power Revenue bonds for $93,500. These bonds are redeemable on July 1, 1999, and earn interest at a rate of 9 percent. The case agent has reported that, to this date, there is no information indicating the whereabouts of these bonds.
 
 
 16
 PSR (91-229) at 17.
 
 
 17
 Silver maintains that he liquidated these bonds prior to his arrest, and used the proceeds to purchase certificates of deposit at an Arizona bank. Further, he argued that it was his "understanding at this time that these assets have been seized by the government in connection with the satisfaction of the civil judgments entered against him." Defendant's Position Re Sentencing Factors, at 4. This issue, contrary to the government's position, is an allegation of a factual inaccuracy that the court was required to resolve or affirmatively ignore. On remand, the district court is directed to append the government's supplemental letter, dated July 23, 1993, to Silver's PSR. The letter details the government's post-appeal investigation with respect to the bonds at issue. The government now concludes that it has corroborative information "consistent with defendant's explanation."
 
 
 18
 Further, in light of the July 23 letter, the court is directed to either resolve the bearer bond issue, or indicate that it played no role in its sentencing decisions.
 
 II.
 
 19
 Silver also contends that the district court's imposition of consecutive sentences violates United States v. Scarano, 975 F.2d 580, 596 (9th Cir.1992). In relevant part, the court at sentencing remarked that
 
 
 20
 All right. You will be given an opportunity to [make amends]. You've engaged in some absolutely egregious actions. As you know, I'm not going to sit here and try to preach to you. The industry in which you were contracting is one that is so vital to this nation and its safety, yet you engaged in a very sophisticated kind of sort of activity as the government has pointed out, as the probation officer has pointed out. And whether you panicked or whatever happened, the fact is that you gained a good bit of money illegally and you went in to fugitive status. While in fugitive status it wasn't enough that you were hiding from the law, but engaging in yet other criminal activity. That part I don't really understand very well at all.
 
 
 21
 ....
 
 
 22
 I am going to make a finding [in docket no. 91-229] that there has been the acceptance of responsibility. So pursuant to the Sentencing Reform Act of 1984 it is the judgment of the court that you be hereby committed to the custody of the Bureau of Prisons to be imprisoned at level 14. And that carries 15 to 21 months. You will be sentenced at the high end of that because you were committing these criminal acts while in a fugitive status. Said sentence will be served consecutively to that imposed for Counts One and Two under docket number 88-316.
 
 
 23
 ....
 
 
 24
 Now, with regard to docket number 88-316--normally in these kinds of cases we don't have consecutive sentences. These are acts that are a part of the ongoing scheme. But I think the probation officer is right. That it's such egregious action that it calls for consecutive penalties.
 
 
 25
 And therefore it's adjudged that on Count One you will be committed to the custody of the Attorney General or his designee for a period of five years. And on Count Two you shall be sentenced to a period in the custody of the Attorney General of the United States or his authorized representative for a period of three years. And Count Two will be consecutive to Count One. And further, both of those counts and the sentences to be served thereunder--Counts One and Two that is--will be consecutive to each other and to the sentence imposed under docket no. 91-229.
 
 
 26
 GER at 38-39, 41-42.
 
 
 27
 Sentences on non-Guidelines offenses that fall within statutory limits are left to the sound discretion of the district court, and will be reviewed only for abuse of discretion. United States v. Pomazi, 851 F.2d 244, 247 (9th Cir.1988). Application of the Sentencing Guidelines is reviewed de novo. United States v. Kohl, 972 F.2d 294, 297 (9th Cir.1992).
 
 
 28
 To the extent Silver complains about the consecutive sentences imposed by the court in the non-Guidelines case (the mail fraud charged in No. 88-316(B)), his complaint is ill-founded. In the context of the two PSRs and the sentencing hearing, it appears that the probation officer's recommendation for consecutive sentences on Counts One and Two of the mail fraud indictment stems largely, if not entirely, from his perception that fraud by a defense department contractor was particularly reprehensible. See PSR (88-316(B)) at 16. It is clear that, under the pre-Guidelines regime, "a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose." United States v. Tucker, 404 U.S. 443, 446 (1972). The district court did not abuse its discretion in deciding to sentence Silver to consecutive prison terms on Count One and Two of the mail fraud indictment, where both terms are within the statutory limit of five years. See 18 U.S.C. § 1341; Tucker, 404 U.S. at 447.
 
 
 29
 The court's further decision to make the pre-Guidelines and Guidelines sentences consecutive, rather than concurrent, is not error. Scarano does not hold otherwise. In that case, the district court combined non-Guidelines offense monetary amounts with Guidelines offense amounts to reach a figure requiring a seven-level Guidelines offense increase. Scarano, 975 F.2d at 582, 586. It then ordered that the defendant serve his non-Guidelines and Guidelines sentences consecutively. Id. at 586.
 
 
 30
 In so doing it impermissibly double punished defendant Scarano, and we remanded for imposition of a new sentence. Id. To avoid double punishment, the court had to choose between " 'mak[ing] an express finding as to the sums of monies lost as a result of the offenses underlying the pre-Guidelines counts and Guideline counts, [and then] calculat[ing] the Guidelines sentence solely with reference to losses not considered in imposing the pre-Guidelines sentence,' " or, " '[a]lternatively, ... aggregat[ing] the amount of losses in calculating the offense level for the Guidelines sentence [and then] impos[ing] concurrent sentences for the pre-Guidelines and Guidelines offenses.' " Id. (emphasis added) (quoting United States v. Niven, 952 F.2d 289, 294 (9th Cir.1991)).
 
 
 31
 Here, the district court clearly did not consider the $1.2 million Silver allegedly acquired by defrauding the Department of Defense in computing Silver's Guidelines-driven counterfeiting sentence. See PSR (91-229) at 9. A violation of 18 U.S.C. § 472 triggers Guidelines § 2B5.1, which carries a base offense level of 9. U.S.S.G. § 2B5.1(a). Subsection (b) requires that amounts greater than $2000 be cross-referenced against the table at § 2F.1, which, in this case, adds an additional seven levels.[3] Thus, following a two-level decrease for acceptance of responsibility, the court sentenced Silver based on a range derived solely on the Guidelines offense.
 
 
 32
 The district court did note that a sentence at the high end of that range (twenty-one months) was appropriate because Silver "committ[ed] these criminal acts while in a fugitive status." Sentencing judges are clearly permitted to take other conduct--criminal or otherwise--into account in imposing sentence. The court simply determined that Silver's counterfeiting activity while a fugitive on the mail fraud charges merited a sentence at the top of the applicable Guidelines range.
 
 
 33
 The fact that the pending mail fraud charges exacerbated the counterfeiting sentence does not mean that Silver cannot be subjected to separate punishment in a consecutive non-Guidelines sentence. Had Silver not avoided the mail fraud prosecution, he would have been sentenced for that offense years prior to being sentenced for the counterfeiting scheme. Further extending the hypothetical, his prior conviction would have been considered in computing the applicable sentencing range, likely changing his criminal history category and bumping the applicable range upward.
 
 
 34
 As both parties recognize, "[n]othing in the [G]uidelines or the Sentencing Reform Act expressly precluded the district court from requiring that [the defendant] serve his non-[G]uidelines sentence consecutively to his [G]uidelines sentence." Scarano, 975 F.2d at 586. In this case, the district judge's determination that conduct engaged in while a fugitive merited a Guidelines sentence at the top of the applicable range, coupled with a consecutive sentence punishing the non-Guidelines offense for which Silver had previously avoided prosecution, does not constitute impermissible double punishment. Silver is not entitled to be resentenced.[4]
 
 
 35
 AFFIRMED, in part, but REMANDED, in part, with directions, for Federal Rule of Criminal Procedure 32(c)(3)(D) compliance.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Silver seems to suggest that the court failed to make the requested factual inquiries with respect to both PSRs--the one filed in CR-91-229, and the one filed in CR-88-316(B). However, his "Defendant's Position Re Sentencing Factors" refers only to CR-91-229 (incorrectly cited as "CR 91-0029"). Further, his counsel at sentencing told the district court that, with respect to CR-88-316(B), "we do not have any specific factual corrections that we would like to have noted. In the companion case there are which have been filed in the Defendant's Position Re Sentencing Factors in the separate case which if the court prefers we will address when we reach that case."
 Thus, it would appear that although there are certain overlaps between the two documents (for example, p 97 in PSR (91-229) is reprinted at page 15 of PSR (88-316(B)), Silver has waived any objection to alleged factual inaccuracies in the latter document. United States v. Visman, 919 F.2d 1390, 1393-94 (9th Cir.1990), cert. denied, 112 S.Ct. 442 (1991).
 
 
 [2]
 We entered an order on June 11, 1993 directing the government to ensure that the transcript of the sentencing hearing was appended to Silver's PSR. The government advises us that it has made the appropriate arrangements
 
 
 [3]
 Section 2F1.1(b)(1)(H) adds seven levels for a monetary amount over $120,000. Silver fell short of an eight-level increase, as mandated in § 2F1.1(b)(1)(I) for an amount over $200,000. Had the alleged $1,204,369 gained in the mail fraud scheme been added to the mix (assuming for present purposes that such a combination is otherwise permissible), an 11-level increase would have been appropriate pursuant to § 2F1.1(b)(1)(M)
 
 
 [4]
 Silver's argument that he is entitled to a three-level acceptance of responsibility decrease when resentenced is thus moot