35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John P. BLOUNT, Defendant-Appellant.
 No. 93-30327.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1994.
Decided Sept. 6, 1994.
 
 Before: SCHROEDER, BOOCHEVER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John Blount was convicted for offenses related to his spiking of trees designated for a timber sale in the Clearwater National Forest. He now appeals his conviction under 18 U.S.C. Secs. 371 and 1361 (1988) alleging insufficient evidence. He also appeals his sentence, claiming that the district court made a variety of errors in setting his offense level and the amount of restitution.[1] We affirm, except as to the amount of restitution.
 
 I. Sufficiency of the Evidence
 
 3
 Blount first argues that the evidence was insufficient for a reasonable jury to conclude that he committed an element of the crimes charged in Counts Two and Six. In considering a challenge to the sufficiency of the evidence, this court decides " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Aichele, 941 F.2d 761, 763 (9th Cir.1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 
 4
 In order to secure a conviction on Counts Two and Six, the government had to show that Blount had the specific intent to "willfully injury[ ] or commit[ ] any depredation against any property of the United States." 18 U.S.C. Secs. 1361 and 371;[2] United States v. Jones, 607 F.2d 269, 273-74 (9th Cir.1979), cert. denied, 444 U.S. 1805 (1980) (Section 1361 establishes a specific intent crime). Blount claims that the evidence did not show that he had any intent to injure the trees, and therefore that the government failed to show any intent to injure government property. We disagree.
 
 
 5
 The evidence was sufficient to show that Blount willfully injured government property. "Property" includes "anything of value, including real estate, tangible and intangible personal property, contract rights, choses-in-action and other interests in or claims to wealth...." Black's Law Dictionary 635 (5th ed. abr. 1983) (citing Model Penal Code Sec. 223.0). The government's claim to the harvest value of the trees in the Clearwater National Forest constituted a property interest. Thus, if an individual willfully does an act which is intended to cause a decrease in harvest value, intentional injury is done to government property.
 
 
 6
 Furthermore, section 1361 does not preclude liability for economic damage. See Magnolia Motor & Logging Co. v. United States, 264 F.2d 950, 953-54 (9th Cir.), cert. denied, 361 U.S. 815 (1959) (suggesting that diminishing the economic value of government property, along with physically damaging the property, is an injury under Sec. 1361). Damage to economic value, if willfully done, is therefore punishable under the statute. Thus, Blount's lack of intent to injure the trees is immaterial; intent to decrease the economic value of the trees is sufficient to constitute intent to injure government property.
 
 
 7
 The economic value of the trees in the sale area was decreased by the spiking, as Blount conceded and as trial testimony revealed. Blount admitted that he intended to cause the tree sale to be cancelled. A reasonable jury could have concluded that he intended to achieve this result by reducing the value of the trees to make any sale less profitable, constituting willful injury to government property.
 
 
 8
 Blount's convictions on Counts Two and Six are therefore affirmed.
 
 II. Sentencing and Restitution
 
 9
 Blount argues that the district court erred in sentencing him and in setting the amount of restitution owed by: (A) improperly setting the loss amount; (B) improperly refusing to grant a reduction for acceptance of responsibility; (C) improperly double-counting by increasing Blount's offense level both for being an organizer and for more than minimal involvement; and (D) improperly calculating the restitution owed.
 
 A. Loss Amount
 
 10
 Blount first argues that the court improperly calculated the total amount of loss incurred by the government. Blount claims that under the proper calculations, his sentence would only have been increased by four points, for causing more than $5,000 in damage, under U.S.S.C. Guidelines Manual Sec. 2B1.1(b)(1)(E) (Nov. 1992), rather than five points, for causing more than $10,000 in damage, under U.S.S.G. Sec. 2B1.1(b)(1)(F). He contends that because he was acquitted on Counts Three and Four, which charged him with spiking 153 trees on a second spiking trip, the lost value of those trees could not be considered in calculating the loss caused.
 
 
 11
 We have previously held that the conduct underlying dismissed counts may be considered when determining the applicable Guidelines offense level if such conduct is relevant to the offense(s) of conviction. See United States v. Fine, 975 F.2d 596, 597 (9th Cir.1992) (en banc) (applying this rule to the calculation of loss amount for fraud conviction). Similarly, when calculating the base offense level in drug conviction cases, the amount of drugs actually involved in an offense may be used to calculate the base offense level, rather than just the amount alleged in the counts on which the defendant was convicted. See, e.g., United States v. Lillard, 929 F.2d 500, 503 (9th Cir.1991) (charged and uncharged parts of methamphetamine manufacturing scheme properly aggregated). Finally, we have held that "[t]he cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction." United States v. Nivin, 952 F.2d 289 (9th Cir.1991) (per curiam). See also United States v. Scarano, 975 F.2d 580, 584 (9th Cir.1992) (where defendant pled guilty to two-count indictment, district court did not err by determining total amount of loss based on the entire course of conduct of which the two counts were part, even where the particular counts to which defendant pled alleged only minimal loss).
 
 
 12
 Despite this precedent calling for consideration of the cumulative loss caused by a defendant's course of conduct, Blount contends that United States v. Brady, 928 F.2d 844, 850-52 (9th Cir.1991), precluded the district court from considering behavior for which he was acquitted. In Brady, we found that the trial court erred when, after a jury verdict acquitting defendant of first-degree murder and assault with intent to murder, it found that the defendant knowingly intended to kill and therefore departed upward in sentencing. Brady is distinguishable from Blount's case. In Brady, the court based its sentence on behavior for which the defendant had been acquitted and to which the defendant had never admitted. Here, although Blount was acquitted of the counts which alleged a second trip into the forest, the sentencing was based on conduct to which Blount admitted: the spiking of all 284 trees.
 
 
 13
 Accordingly, the district court could consider the total loss caused by the course of conduct to which Blount admitted. It thus did not err when it considered the value of all 284 spiked trees when calculating Blount's base offense level, even though Blount was convicted for spiking only 131 trees. The value of the 284 trees was decreased by at least $12,690 (according to the amount the buyer would have paid but for the spiking), an amount over $10,000. The district court properly added five points to Blount's base offense level pursuant to U.S.S.G. Sec. 2B1.1(b)(1)(F).
 
 
 14
 Because the damage was over $10,000, regardless of whether the cost of the Forest Service investigation is included, we need not consider Blount's argument that the cost of the investigation should not have been included in the calculation of the loss caused.
 
 B. Acceptance of Responsibility
 
 15
 Blount next argues that the trial court erred by not granting him a two-point reduction for acceptance of responsibility. The Sentencing Guidelines allow a two-point reduction in a defendant's total offense points if the "defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. Sec. 3E1.1(b). In order to qualify for such a reduction, the defendant must demonstrate by a preponderance of the evidence that he accepts responsibility for his offense. Id.
 
 
 16
 The district court's determination that a defendant did not accept responsibility is reviewed for clear error. United States v. Scarano, 975 F.2d 580, 587 (9th Cir.1992). The decision of the sentencing judge on this issue is entitled to great deference because that judge is in a "unique position to evaluate a defendant's acceptance of responsibility." Brady, 928 F.2d at 848 n. 5 (quoting U.S.S.G. Sec. 3E1.1 comment. n. 5).
 
 
 17
 The district court denied the two-point reduction, stating during the sentencing proceedings that although Blount admitted to the spiking, "the real issue is whether or not there is any acceptance of the wrongfulness of the conduct." The court was concerned about whether there was "any true ... contrition on the part of the defendant." Lack of contrition or remorse is a proper ground for denying the reduction. See Nivin, 952 F.2d at 292 (no error to deny reduction where, although the defendant admitted to the culpable conduct and cooperated with the government, the court found that "[Nivin] showed no contrition."); Scarano, 975 F.2d at 587 (no error in denying the two-point reduction when the court relied on the argument that Scarano had shown no remorse for having committed the offense of conviction).
 
 
 18
 Here, the district court properly could have questioned Blount's remorsefulness for his actions, despite Blount's statement at sentencing and his letter to the court expressing regret. The district judge saw Blount in person and heard his statements, and was thus in a better position than this court to judge Blount's remorsefulness. Furthermore, Blount did not accept responsibility until trial, did not voluntarily surrender to officials, and did not voluntarily pay restitution prior to adjudication of guilt. See Brady, 928 F.2d at 847-48 n. 4 (listing factors to guide the sentencing court in determining whether there has been an acceptance of responsibility). The district court did not clearly err in denying the two-point reduction for acceptance of responsibility.
 
 C. Double Counting
 
 19
 Blount contends that the trial court double counted when it increased his base offense level both for being an organizer under U.S.S.G. Sec. 3B1.1(c), and for more than minimal planning, under U.S.S.G. Sec. 2B1.3(b)(3).[3] Blount did not object to these adjustments at sentencing; thus we review for plain error. United States v. Dischner, 974 F.2d 1502, 1515 (9th Cir.1992) (as amended), cert. denied, 113 S.Ct. 1290 (1993).
 
 
 20
 Blount argues that the increase in offense level for being an organizer under Sec. 3B1.1(c) necessarily took into consideration his more than minimal planning, see U.S.S.G. Sec. 3B1.1(a) comment n. 3 (in determining whether the defendant was an organizer, manager, or supervisor, "[f]actors the court should consider include ... the degree of participation in planning or organizing the offense"), and that increasing his base offense level for more than minimal planning as well was therefore improper double counting. See United States v. Romano, 970 F.2d 164, 166-67 (6th Cir.1992) (imposing a rule against double counting for being an organizer without control over more than five participants and more than minimal planning).
 
 
 21
 We have held, however, that "multiple uses of a particular aspect of a defendant's past behavior are proper where each invocation of the particular behavior serves a unique purpose under the Guidelines." United States v. Starr, 971 F.2d 357, 361 (9th Cir.1992). Thus in Starr, the district court did not err when it considered defendant's probation status in setting his criminal history score and also in departing upward under Sec. 4A1.1(d) (authorizing addition of points if defendant committed offense while on probation). This was not double counting because considering the probation status in the criminal history score related to the defendant's failure to learn from past mistakes, while using the probation status to depart pursuant to Sec. 4A1.1(d) related to the increased culpability of committing the instant offense while in violation of probation. Id.
 
 
 22
 Similarly, in Blount's case, the two Guidelines provisions serve unique purposes. The increase under Sec. 2B1.3(b)(3) for more than minimal planning addresses the deliberate and premeditated nature of Blount's actions, evidenced by his preparation of a plan to spike a specific area of trees, his purchase of spikes and paint to carry out the plan, his preparation of signs announcing the spikers' disagreement with the sale of the trees for timber, and his letter to the Forest Service warning of the group's actions. Under this provision, an individual's sentence can be increased for such elaborate planning activities regardless of whether he acted individually or as part of a group.
 
 
 23
 Section 3B1.1(c), however, addresses a defendant's role as a group leader, organizing individuals to commit a crime. The increase in the defendant's punishment under this section is "included primarily because of concerns about relative responsibility," and also because "persons who exercise a supervisory or managerial role in the commission of an offense ... present a greater danger to the public and/or are more likely to recidivate." U.S.S.G. Sec. 3B1.1, comment. (backg'd.). The section's application notes refer to the defendant's planning activities simply as one of a number of means of determining whether a defendant had a leadership role in the group's activities. It can be applied even where the defendant did not participate in planning the offense but nonetheless had a leadership role in the commission of the offense.
 
 
 24
 Thus, the two Guidelines sections used to increase Blount's base offense level serve different, unique purposes. One provision is concerned with planning and preparation, the other with leadership. The district court's increase of Blount's sentence pursuant to both provisions therefore was not improper. Cf. United States v. Curtis, 934 F.2d 553, 556-57 (4th Cir.1991) (permissible to increase defendant's sentence both for more than minimal planning and for being an organizer or manager because Guidelines do not explicitly provide that consideration of planning behavior could not occur under more than one guideline provision).
 
 D. Restitution Amount
 
 25
 Finally, Blount challenges the amount of restitution the district court ordered him to pay. A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. United States v. Sanga, 967 F.2d 1332, 1335 (9th Cir.1992). We review de novo the district court's interpretation of the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. Sec. 3663 (1988). United States v. Koenig, 952 F.2d 267, 274 (9th Cir.1991).
 
 
 26
 Blount first argues that in setting the restitution amount, the court properly could consider only the lost value of the trees which he was actually convicted of spiking. The trees allegedly spiked on the second trip, he claims, cannot be included because he was not convicted of spiking them. We agree. Pursuant to the VWPA, Congress intended to " 'authorize an award of restitution only for the loss caused by the specific conduct underlying the offense of conviction.' " United States v. Jackson, 982 F.2d 1279, 1282 (9th Cir.1992) (quoting Hughey v. United States, 495 U.S. 411, 413 (1990)). For example, in United States v. Garcia, 916 F.2d 566, 567 (9th Cir.1990), when the defendant was charged with committing two bank robberies but was convicted of committing only one, restitution could properly be ordered only for the bank robbery of which he was convicted.
 
 
 27
 Although Blount admitted to spiking 284 trees, he was only convicted for spiking 131. Pursuant to the VWPA, Blount can only be accountable for restitution for the 131 trees he was convicted of spiking.[4]
 
 
 28
 Blount's second argument with regard to the restitution order concerns the restitution for cost of investigation. Blount does not dispute that the general expenses incurred by the Forest Service when it conducted its investigation of the damage were properly included in the amount of restitution. Thus we do not address this question. See United States v. Newman, 6 F.3d 623, 631 (9th Cir.1993). Blount does contend, however, that the salaries of the Forest Service personnel who conducted the post-spiking "timber cruise" (necessary to assess the damage done and to mark any unmarked spikes in order to prepare the damaged area for the planned timber sale) should not have been included as part of these costs.
 
 
 29
 Restitution properly includes only losses directly resulting from a defendant's offense. See United States v. Kenney, 789 F.2d 783, 784 (9th Cir.) (salaries of bank employees who testified at defendant's trial are costs of prosecution too remote to form a basis of restitution), cert. denied, 479 U.S. 990 (1986); United States v. Salcedo-Lopez, 907 F.2d 97, 98 (9th Cir.1990) ("costs of investigating and prosecuting an offense are not direct losses for which restitution may be ordered"). Restitution orders may, however, include costs the victim incurred as a direct result of the crime, costs necessary to restore the victim to its original position. Thus in Kenney, although trial witness' salaries were not compensable, a technician's fee for removing film from a surveillance camera was considered a "direct" result of the bank robbery and therefore properly included in the restitution order. 789 F.2d at 784. And in Koenig, a restitution order including the victim bank's expenses for notifying customers of ATM thefts, answering customer's inquiries, and reprogramming stolen ATM accounts was proper. 952 F.2d at 275.
 
 
 30
 Here, the costs of the Forest Service investigation were not incurred in preparation for prosecution, they were incurred in order to prepare the spiked area for the planned sale. This expense, as in Koenig, was directly caused by the defendant's crime, and was necessary to restore the government, the victim of Blount's crime, to its pre-crime status.
 
 
 31
 The salaries of the Forest Service employees conducting the investigation were part of the expense of repairing the damage to the extent possible and are appropriately included in the restitution order. Blount's argument that the salaries would have been paid in any case is without merit; but for the spiking, the investigators' time could have been put to a productive use for the benefit of the Forest Service.
 
 
 32
 Accordingly, the restitution order is vacated only to the extent it includes the value of damaged trees not part of the offense of conviction. The remainder of the restitution order and the sentence of incarceration are affirmed.
 
 CONCLUSION
 
 33
 The evidence was sufficient to support Blount's conviction for willful injury to government property because the jury could reasonably find that Blount intended to reduce the harvest value of the trees. The trial court did not err in sentencing Blount for the Secs. 371 and 1361 convictions. The restitution order is, however, vacated in part. We remand to the district court for recalculation of the restitution award, and also for reconsideration of Blount's sentence in light of our simultaneously-filed opinion in this case. AFFIRMED in part, VACATED and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Blount also appeals his conviction pursuant to 18 U.S.C. Sec. 1864 (1988). We address that issue separately in an opinion for publication filed simultaneously with this disposition
 
 
 [2]
 18 U.S.C. Sec. 1361 states in pertinent part:
 Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, ... shall be punished as follows:
 If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years or both; if the damage to such property does not exceed the sum of $100, by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.
 18 U.S.C. Sec. 371 states in pertinent part:
 If two or more persons conspire to commit any offense against the United States ... and one or more persons do any act to effect the object of the conspiracy, each shall be fined not more $10,000 or imprisoned not more than five years, or both....
 
 
 [3]
 Section 3B1.1 states:
 Based on the defendant's role in the offense, increase the offense level as follows:
 ....
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 Section 2B1.3(b) states:
 Specific Offense Characteristics
 ....
 (3) If the offense involved more than minimal planning, increase by 2 levels.
 
 
 [4]
 This does not affect our determination above that the total value of the 284 trees damaged could properly be considered in calculating the loss caused for the purpose of setting Blount's offense level